**The PEOPLE of the State of Colorado,
Plaintiff–Appellee,**

v.

**Paul E. INMAN, Defendant–Appellant.**

No. 96CA0257.

Colorado Court of Appeals,
Div. II.

July 24, 1997.*

As Modified on Denial of Rehearing
July 24, 1997.

Certiorari Denied Feb. 2, 1998.

---

\* Opinion previously announced as non-published
(June 5, 1997) is now selected for official publi-    cation.

Gale A. Norton, Attorney General, Stephen K. ErkenBrack, Chief Deputy Attorney General, Timothy M. Tymkovich, Solicitor General, Wendy J. Ritz, Assistant Attorney General, Denver, for Plaintiff–Appellee.

The Law Offices of Kain & Barry, P.C., William H. Kain, Dianne K. Barry, Grand Junction, for Defendant–Appellant.

Opinion by Judge DAVIDSON.

Defendant, Paul E. Inman, appeals from the judgments of conviction entered upon jury verdicts of guilty of contributing to a hazardous substance incident and disposing of hazardous waste without a permit. We affirm.

According to the prosecution's evidence, after an explosion at a salvage yard where defendant worked, defendant loaded three cylinders of liquid chlorine into his pickup truck. He and his then-girlfriend (ex-wife) drove to a public park, where defendant unloaded the cylinders and left them in a depression in the ground. One cylinder was labeled "chlorine," and none of the cylinders had a safety cap.

Defendant and ex-wife subsequently married, but the marriage was dissolved. At trial, ex-wife testified against him under a grant of immunity.

## I.

Section 13–90–107(1)(a)(I), C.R.S. (1996 Cum.Supp.) sets forth the marital privilege:

A husband shall not be examined for or against his wife without her consent, nor a wife for or against her husband without his consent; nor during the marriage or afterward shall either be examined without the consent of the other as to any communications made by one to the other during the marriage.

■ This statute creates two different privileges with respect to spousal testimony. The first is the privilege against adverse spousal testimony, also known as the rule of spousal disqualification. The second is the privilege against disclosure of spousal conversations. *People v. Lucero,* 747 P.2d 660 (Colo.1987).

### A.

Defendant's first argument is directed at the privilege against adverse spousal testimony. He argues that his marriage to ex-wife had not been dissolved on October 18, 1995, the time ex-wife testified against him at trial. Therefore, he contends, because he did not consent, ex-wife's testimony was prohibited. We disagree.

■ "As long as there is a valid contract of marriage in existence at the time of the proffered testimony, the statutory privilege against adverse spousal testimony will apply to prohibit one spouse from testifying for or against the other on any subject without the consent of that other spouse." Conversely, if there is no valid marriage, the privilege against adverse spousal testimony does not apply. *In re Marriage of Bozarth,* 779 P.2d 1346, 1349 (Colo.1989).

Defendant's ex-wife filed a petition for dissolution of marriage in March 1995. Temporary orders were issued on April 6, 1995, and a permanent orders hearing was held on August 10, 1995. At defendant's trial here,

the court noted the entry of the following minute order in the dissolution proceeding:

> 8/10/95 Contested final.... Decree entered. Court reserves jurisdiction to enter permanent orders. [Wife's attorney] to prepare order.

The trial court also noted, and the parties agree, that the minute order had been initialed by the judge presiding in the dissolution proceeding.

■ Defendant's contention to the contrary notwithstanding, a decree granting dissolution is final when entered and dissolves the marital status of the parties, even if the order is not treated as final for the purpose of appellate review. *In re Estate of Burford,* 935 P.2d 943 (Colo.1997).

Moreover, also contrary to defendant's contention, the minute order here is a written, signed, and dated order for the purposes of C.R.C.P. 58(a). The form order later prepared by ex-wife's attorney and signed by the court merely evidenced the decree entered by the court in its signed minute order. *See In re Marriage of Christen,* 899 P.2d 339 (Colo.App.1995) (minute order is a "writing" pursuant to C.R.C.P. 58(a) but not "entered" pursuant to that rule if unsigned); *cf. In re Marriage of Hoffner,* 778 P.2d 702 (Colo.App. 1989); *Poor v. District Court,* 190 Colo. 433, 549 P.2d 756 (Colo.1976) (period for filing motion for new trial, under earlier versions of the applicable rules, is governed by date of mailing of notice of judgment, not by date of entry of unsigned minute order).

Thus, because the parties' marriage was dissolved prior to October 18, 1995, the privilege against adverse spousal testimony was inapplicable.

### B.

■ Defendant also contends that the privilege against spousal disclosure barred ex-wife's testimony. However, factual findings by a trial court which are supported by the record may not be disturbed on appeal. *Page v. Clark,* 197 Colo. 306, 592 P.2d 792 (1979). The trial court's findings preclude application of the spousal disclosure privilege here.

■ The privilege against spousal disclosure applies to communications made by one spouse to another, but only during the marriage. *See In re Marriage of Bozarth, supra.* With record support, however, the trial court found that the statements in question were made in April or May of 1993, but that the parties were not married until November 1993.

Furthermore, to the extent that defendant argued that, at the pertinent time, he and ex-wife were married by common law, the trial court also found to the contrary. Specifically, and again, with record support, the court determined that defendant "had ample opportunity to present [evidence] and chose not to [and therefore] waived his rights to do it." *See* § 13–90–107(1)(a)(IV), C.R.S. (1996 Cum. Supp.) (burden of proving the existence of a marriage for purpose of asserting privilege shall be on the party asserting the claim); *see also People v. Lucero, supra* (requirements of common law marriage).

### II.

In 1994, ex-wife was convicted of misdemeanor false reporting against defendant. During preparation of jury instructions, after ex-wife had testified and had been excused, defense counsel informed the court that he had "just learned" of this conviction. He requested permission to recall ex-wife so that she could be cross-examined about the conviction or, alternatively, to introduce a certified copy of the conviction into evidence.

The trial court ruled that, because the evidence was offered to challenge ex-wife's credibility, the proper procedure would have been to examine her during her testimony about the specific incident of false reporting. Depending on her response, the court reasoned, it would have then been within its discretion to permit extrinsic evidence at that point.

The court proceeded to find that defendant knew of the conviction because defendant was the victim of that offense. The court then ordered that, nonetheless, if ex-wife could be located, defendant would be permitted to recall her for cross-examination about the conviction. Later that day, defendant

informed the trial court that he could not locate ex-wife and requested a continuance. The trial court denied the request.

Defendant argues that the trial court abused its discretion by excluding the proffered evidence and by denying his request for a continuance. We do not agree.

First, the trial court correctly determined that, although a specific instance of conduct such as the conviction here may be a proper subject of inquiry on cross-examination, it cannot be proven by extrinsic evidence. *See People v. Gillis*, 883 P.2d 554 (Colo.App.1994). Furthermore, it was well within the trial court's discretion to allow limited cross-examination if defendant could locate the witness. *See People v. Waters*, 641 P.2d 292 (Colo.App.1981).

Nor was the court's refusal to grant a continuance to locate ex-wife an abuse of discretion. *See People v. Lee*, 914 P.2d 441 (Colo.App.1995) (denial of motion for continuance is within the trial court's discretion).

Under the totality of the circumstances and, in particular, in light of the fact that defendant either knew or should have known of the conviction, that ex-wife had been excused without objection, and that a jury was waiting to receive instructions, the trial court's decision to deny the request was reasonable.

### III.

Defendant next asserts that the evidence was insufficient to sustain his convictions. We disagree.

A challenge to the sufficiency of the evidence requires a reviewing court to determine whether the relevant evidence, both direct and circumstantial, when viewed as a whole and in the light most favorable to the prosecution, is substantial and sufficient to support a conviction by a reasonable person that the defendant is guilty of the crime charged beyond a reasonable doubt. The prosecution must be given the benefit of every reasonable inference which might fairly be drawn from the evidence. *Kogan v. People*, 756 P.2d 945 (Colo.1988).

### A.

The jury was instructed, without objection, that a "hazardous substance incident" means:

> any emergency circumstances involving the sudden discharge of a hazardous substance which in the judgment of an emergency response authority, threatens immediate and irreparable harm to the environment or health and safety of any individual and includes those incidents of spilling, dumping, or abandonment of a hazardous substance, whether or not such spilling, dumping or abandonment is found to threaten immediate and irreparable harm.

This language tracks the definition of "hazardous substance incident" set forth in § 29–22–101, C.R.S. (1986 Repl.Vol. 12A).

Defendant asserts that, because there was no evidence that any chlorine evaporated into the atmosphere or got into surface or ground water, the evidence was insufficient to sustain his conviction of contributing to a hazardous substance incident. However, by the plain terms of the instruction, a "hazardous substance incident" includes the abandonment or dumping of a hazardous substance which does not threaten immediate or irreparable harm. Thus, the absence of evidence of a discharge into the environment was immaterial.

### B.

Defendant also was charged with disposing of hazardous waste without a permit, in violation of § 25–15–310(1)(b), C.R.S. (1989 Repl.Vol. 11A). "Disposal" of hazardous waste was defined for the jury as "the discharge, deposit, injection, dumping, spilling, leaking, or placing of any hazardous waste into or on any land or water so that such hazardous waste or any constituent thereof may enter the environment or be emitted into the air or discharged into any waters, including ground waters." *See* § 25–15–101(3) C.R.S. (1996 Cum.Supp.). In addition, the jury was instructed, at defendant's request, that "dispose" means "to get rid of," "dump" means "to unload or discard in a mass," and "abandon" means "to leave a thing with the intention not to retain posses-

sion of or assert ownership or control over it."

Defendant asserts that there was insufficient evidence to prove that the cylinders were "permanently" dumped or abandoned because there was evidence that they had monetary value. Regardless, however, there also was ample evidence from which the jury could infer that, despite their commercial worth, defendant had not left the cylinders temporarily, but with the specific intent to abandon them.

### IV.

Finally, defendant asserts that the trial court erred in failing to give two tendered instructions. We disagree.

In general, a defendant is entitled to an instruction on his theory of the case if there is any evidence in the record to support it. *People v. Dillon*, 655 P.2d 841 (Colo.1982). However, it is not error to refuse to give a tendered theory of the case instruction containing material that tends to be argumentative rather than instructive, or that simply calls attention to specific points of evidence. *Armijo v. People*, 134 Colo. 344, 304 P.2d 633 (1956); *People v. Weiss*, 717 P.2d 511, 512 (Colo.App.1985); *see also Marn v. People*, 175 Colo. 242, 486 P.2d 424 (1971).

Furthermore, a trial court may properly refuse an instruction which merely restates points already encompassed in other instructions given to the jury, or which reiterates a general denial of guilt. *People v. Banks*, 804 P.2d 203 (Colo.App.1990); *People v. Rivera*, 710 P.2d 1127 (Colo.App.1985). In addition, a trial court may refuse to give an instruction which misstates the law. *See People v. Huckleberry*, 768 P.2d 1235 (Colo. 1989).

Here, since defendant's definitions of "abandon," "dispose," and "dump" were incorporated into another instruction, the trial court properly rejected that proposed instruction. The remaining proffered definition—"hazardous waste disposal"—similarly was properly rejected since it was covered adequately by other instructions. Moreover, the proposed instruction used the definition of "hazardous waste disposal" from § 25–15–

200.3, C.R.S. (1989 Repl.Vol. 11A), which pertains to the permitting of hazardous waste disposal sites and had no applicability here.

The court also did not err in rejecting defendant's theory of defense instruction. As the trial court recognized, the last two paragraphs of the tendered instruction were simply a denial that the prosecution had proven its case beyond a reasonable doubt and restated points encompassed in other instructions. Moreover, the first paragraph was argumentative, improperly emphasized specific evidence, and did not instruct the jury on the legal effect of that evidence. *See People v. Weiss, supra.*

The judgments are affirmed.

PLANK and BRIGGS, JJ., concur.