**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Anthony Jerome SMITH, Defendant–Appellant.**

**No. 01CA0548.**

Colorado Court of Appeals, Div. V.

Jan. 2, 2003.

Rehearing Denied April 17, 2003.

Certiorari Denied Oct. 6, 2003.

§ 24–51–1105, C.R.S.2002.

Ken Salazar, Attorney General, John D. Seidel, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

David S. Kaplan, Colorado State Public Defender, Karen N. Taylor, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge TAUBMAN.

Defendant, Anthony Jerome Smith, appeals the judgment of conviction entered on a jury verdict finding him guilty of felony escape. We affirm.

Defendant was serving a sentence of incarceration for first degree assault and attempted escape and was paroled in November 1998. Approximately one month later, the parole board found defendant guilty of several parole violations, but continued his parole with the added condition that he complete 180 days in the Intensive Supervision Program (ISP).

Under ISP, defendant was subject to additional parole conditions, such as remaining at his residence every day during certain "curfew" hours and wearing an electronic monitor (ankle bracelet) at all times. On December 21, 1998, defendant signed a statement indicating that he had a "full and intelligent understanding" of the additional ISP conditions. Defendant also signed a statement pursuant to § 17–27.5–104, C.R.S., 2002, which advised him that failure to remain within the extended limits of his confinement as established by ISP would be deemed an escape from custody and punishable as provided in § 18–8–208, C.R.S.2002, the felony escape statute.

Defendant did not return to his residence on January 1, 1999, and his whereabouts remained unknown until he was arrested in Las Vegas, Nevada, on January 11, 1999.

After a trial, the jury found defendant guilty of felony escape.

## I. Conflict Between Statutory Provisions

Defendant contends he was liable only for a parole violation, rather than felony escape, when he did not remain within the limits of his home detention, because he was on home detention as a condition of his parole. We disagree.

[1–5] Appellate courts review interpretations of statutes de novo. When construing statutes, a court's primary purpose is to ascertain and give effect to the intent of the General Assembly. *People v. Robertson,* 56 P.3d 121, 123 (Colo.App.2002). Courts must construe each provision of a comprehensive statutory scheme to effectuate the overall legislative intent. *People v. Garcia,* 64 P.3d 857, 2002 WL 58926 (Colo. App. No. 99CA2360, Jan. 17, 2002). To determine intent, courts give statutory terms their commonly accepted meaning. Where the statutory language is unambiguous and the legislative intent reasonably clear, courts do not apply other rules of statutory construction. *People v. Triantos,* 55 P.3d 131, 134 (Colo.2002). In addition, courts should not presume the General Assembly used language idly. *People v. J.J.H.,* 17 P.3d 159 (Colo.2001).

A person commits felony escape when, as relevant here, he or she knowingly escapes from custody or confinement while in custody or confinement for a conviction of a felony. The classification of the escape offense depends on the class of the underlying felony for which the defendant was in custody or confinement. *See* § 18–8–208(1)–(2), C.R.S.2002.

Two other escape statutes are pertinent to our discussion here. First, under the escape provision in the ISP statutes, an offender who does not remain "within the extended limits on his confinement" as established by the ISP is deemed to have escaped from custody and if convicted, is sentenced as provided in the felony escape statute. Section 17–27.5–104.

Second, the statutory provisions governing escape for offenders in a Home Detention Program (HDP) differentiate between offenders directly sentenced to home detention, who are liable for an escape charge if they "fail[ ] to remain within the extended limits of a home detention program," and offenders on parole, who are liable for a parole violation if they do not "remain within the limits of a home detention program." Section 17–27.8–106, C.R.S.2002.

For the purposes of the HDP statutes, "home detention" is defined as:

> an alternative correctional sentence or term of probation supervision wherein a defendant ... is allowed to serve his sentence ... or a portion thereof, within his home or other approved residence. Such sentence ... shall require the offender to remain within his approved residence *at all times except for* approved employment, court-ordered activities, and medical needs.

Section 17–27.8–101(1), C.R.S.2002 (emphasis added).

Under HDP, an offender must be personally monitored by a home detention officer and supervised by electronic monitoring devices capable of detecting and reporting the offender's absence from his or her residence, workplace, or court-approved activity. The offender also must be available to attend any court-ordered counseling, substance abuse treatment, vocational rehabilitation, training, or education. Section 17–27.8–103(2)(a)–(c), C.R.S.2002. An offender may be placed in HDP by a sentencing judge or the state board of parole as a condition of parole or modified parole. Sections 17–27.8–104, 17–27.8–105, C.R.S.2002.

In contrast, under ISP, an offender must receive the minimum services consistent with public safety, including (1) highly restricted activities; (2) weekly face-to-face contact; (3) daily telephone contact; (4) monitored curfews at the offender's residence at least once a month; (5) employment visitation and monitoring at least twice each month; (6) home visitation; (7) drug and alcohol screening; (8) treatment referrals and monitoring; and (9) payment of restitution and community service in a manner that minimizes any risk to the public. Section 17–27.5–102(2), C.R.S. 2002. Only the state parole board is authorized to place an offender in ISP as a condi-

tion of his or her parole. Section 17–27.5–106, C.R.S.2002.

## A. Escape Provisions

Defendant contends that the escape provision in the ISP statute conflicts with the statutory provision governing escape by offenders in HDP. Thus, he argues, under the rules of statutory construction, including the rule of lenity, when a parolee on home detention leaves the limits of his or her confinement, the parolee commits a parole violation, not a felony escape. The People contend that the trial court properly concluded that defendant was charged with escape from ISP and that the HDP escape statute did not apply to him. We agree with the People.

■ While a defendant may be placed at home under either HDP or ISP, each program has distinct substantive provisions. *Compare* § 17–27.5–101, et seq., C.R.S. 2002(ISP), *with* § 17–27.8–101, et seq., C.R.S.2002(HDP).

By their plain language, the HDP and ISP statutes concern distinct programs. First, only the parole board can place an offender in ISP. Section 17–27.5–106. In contrast, either the sentencing court or the parole board may place an offender in HDP. Section 17–27.8–104. Second, ISP also contains more stringent and extensive standards than HDP. *Compare* § 17–27.5–102(2)(ISP), *with* § 17–27.8–103(2)(a)–(c)(HDP).

The trial court must make a factual determination whether a defendant has been placed in HDP or ISP. Because HDP and ISP are mutually exclusive programs, once the court determines that a defendant was in ISP, we discern no conflict between the statutory provisions of HDP and ISP.

Contrary to the requirements of HDP, defendant's curfew condition here did not require him to remain within his residence at all times, except for approved employment, court-ordered activities, and medical needs. Instead, his ISP condition required him to be at his residence during "curfew" hours, unless a change was approved by his parole officer. Specifically, defendant's curfew hours were Monday through Friday, 7:00 a.m. to 6:00 p.m., except Wednesday 7:00 a.m. to 10:00 p.m., Saturday 12:00 p.m. to 6:00 p.m., and Sunday 10:00 a.m. to 6:00 p.m. In addition, as the trial court found, defendant signed a document entitled "Intensive Supervision Program Englewood Parole," which did not refer to HDP. Therefore, we conclude that the trial court's finding that defendant was placed in ISP, rather than HDP has record support, and we will not disturb it on review.

## B. Jury Instruction on HDP Escape

Defendant further argues that the trial court erred in refusing to instruct the jury on the HDP escape provision because it directly related to his mens rea. We disagree.

■ A defendant is entitled to a jury instruction on his or her theory of the case if the record contains any evidence to support the theory and it is not embodied in other instructions. The trial court has an affirmative obligation either to correct the tendered theory of the case instruction or to incorporate the substance of the tendered instruction into the final jury instructions. *People v. Nunez*, 841 P.2d 261, 264–66 (Colo.1992). However, a trial court may refuse to give a defendant's theory of the case instruction that misstates the law, is argumentative, or improperly emphasizes specific evidence. *People v. Inman*, 950 P.2d 640, 645 (Colo. App.1997).

■ Appellate courts consider the jury instructions as a whole when determining whether the jury has been adequately informed of the defendant's theory of the case. The court also considers whether defense counsel's closing statement fairly represented the defendant's theory to the jury. *People v. Dore*, 997 P.2d 1214, 1222 (Colo.App. 1999).

■ Here, defendant proceeded to trial pro se, and one of his tendered jury instructions quoted the HDP escape statute, § 17–27.8–106, and stated that it was "a statute binding in this state." The trial court refused the instruction, concluding that only the felony escape statute and the ISP escape statute were applicable. The court determined that the HDP escape statute did not apply, except to support defendant's belief

that his trip to Las Vegas would constitute only a parole violation.

Accordingly, the trial court instructed the jury that defendant believed he had only violated a parole provision and thus had not knowingly escaped from custody or confinement. The trial court also instructed the jury on the affirmative defense of mistake of fact, based on defendant's belief that he was not in "custody or confinement."

Further, defendant testified at trial and argued in closing that he believed he was only committing a parole violation and this belief was based on his understanding of the HDP escape statute.

Thus, we conclude the trial court adequately instructed the jury as to defendant's theory of the case. *See People v. Nunez, supra; People v. Dore, supra; People v. Inman, supra.*

Accordingly, we find no error.

## II. Right to Counsel

Defendant next contends the trial court erred in concluding he waived his Sixth Amendment right to counsel. Again, we disagree.

A defendant has a constitutional right to counsel. U.S. Const. amend. VI; Colo. Const. art. II, § 16.

However, a defendant may waive the right to counsel expressly or impliedly. The waiver must be voluntarily, knowingly, and intelligently made by the defendant based on the circumstances of each case. The burden is on the prosecution to establish a valid waiver. "[T]he court should indulge every reasonable presumption against finding a waiver. Any doubts should be resolved in favor of the defendant." *People v. Campbell,* 58 P.3d 1148, 1155 (Colo.App.2002).

"A trial court's determination that a defendant waived the constitutional right to counsel will be upheld if the record affirmatively establishes that the defendant knowingly and intelligently waived that right." *People v. Arguello,* 772 P.2d 87, 93 (Colo.1989). To determine the validity of a waiver, appellate courts examine the on-the-record advisement given a defendant and the

totality of the circumstances in the record as a whole. *People v. Mossmann,* 17 P.3d 165, 170 (Colo.App.2000).

A waiver of the right to counsel presents a mixed question of law and fact that we review de novo. *People v. Stanley,* 56 P.3d 1241, 1244 (Colo.App.2002).

Once a defendant objects to his or her court-appointed counsel, the trial court must inquire into the reason for the dissatisfaction. If a defendant establishes good cause, such as a conflict of interest or a breakdown in communication, the court must appoint new counsel. The court must verify the defendant has "some well founded reason for believing that the appointed attorney cannot or will not completely represent him" before a change of counsel is warranted. *People v. Arguello, supra,* 772 P.2d at 94 (quoting 2 W. LaFave & J. Israel, *Criminal Procedure* 37 (1984)).

If the court determines a substitution of counsel is not warranted, it may insist the defendant choose between continuing with present counsel and proceeding pro se. Before proceeding pro se, a defendant must be given a "clear choice" between existing counsel and waiver of counsel. A defendant who refuses without good cause to proceed with able counsel has effected a "voluntary" waiver. *People v. Arguello, supra.*

In *Arguello,* the supreme court suggested a specific colloquy to be conducted between the trial court and a defendant to ensure a voluntary, knowing, and intelligent waiver of the right to counsel and set forth a proposed colloquy in the appendix for guidance. Nonetheless, the absence of the specific colloquy does not automatically result in an invalid waiver. *People v. Arguello, supra,* 772 P.2d at 96.

As the *Arguello* court held, in rare circumstances, a defendant's waiver of the right to counsel may be valid without use of the proposed colloquy, but in that event, a reviewing court must consider the advisement and the totality of the circumstances in the record as a whole. *People v. Smith,* 881 P.2d 385, 388 (Colo.App.1994). "However, before

a reviewing court can find a valid implied waiver based on conduct, there must be ample, unequivocal evidence in the record that the defendant was advised properly in advance of the consequences of his actions." *People v. Arguello, supra,* 772 P.2d at 97.

In *People v. Garcia, supra,* a defendant on mandatory parole in ISP disagreed with his court-appointed attorney about whether to assert the defense that the escape statute did not apply to him as a mandatory parolee. Relying on *Arguello,* a division of this court concluded that the conflict between the defendant and the public defender's office was a disagreement over strategy and was not a sufficient ground for defendant to believe that his court-appointed attorney could not or would not completely represent him. The division further concluded that the trial court sufficiently advised the defendant of the dangers and disadvantages of self-representation. *People v. Garcia, supra,* 64 P.3d at ——, 2002 WL 58926.

 Here, defendant, acting pro se, twice sought to remove his court-appointed attorney. Defendant filed a motion to dismiss the public defender's office as counsel and requested the court to appoint a new attorney. At a hearing on the motion, defendant asserted that he disagreed with counsel over the application of law to his case and that counsel had incorrectly advised him that he could receive an aggravated sentence. In response, defense counsel stated that he had "thoroughly researched" defendant's legal issue and no conflict prevented continued representation.

The trial court advised defendant that the court would determine what law applied and that any sentence could be aggravated. Defendant indicated that he understood this. The court further advised defendant that he controlled whether to have a trial, whether to plead guilty, and whether to testify. Defendant was also advised by the trial court that defense counsel controlled trial strategy and that a disagreement over applicable law was not grounds to dismiss counsel.

However, the trial court cautioned defendant that "[R]eading statutes is not as easy as you think they are. The mere fact that something says something on paper [sic]

there's a question as to how it applies and whether or not in fact it does or doesn't apply in a case." The court advised defendant that defense counsel was a "competent trial attorney" who had been in court "probably more times" than defendant had, and he should listen to counsel's advice. At this hearing, therefore, the trial court cautioned defendant about the perils of self representation. At the conclusion of the hearing, defendant agreed to work with counsel.

Defendant then filed an amended motion to dismiss his court-appointed attorney and requested appointment of new counsel. At a subsequent hearing, defense counsel advised the court that defendant wanted to proceed pro se and have advisory counsel appointed. Defendant told the court, "I feel right now, at this point in time, I probably know more about these issues in these books, about these certain cases, because it depends on my life, than anybody in Colorado." This statement, together with the trial court's warning at the previous hearing, support the trial court's conclusion that defendant waived his right to counsel.

When the trial court asked defendant whether he wanted to represent himself, he stated, "If I have to—yes, I would, and I would[.]" The court further stated, "[Defense counsel] has indicated that you want the assistance of advisory counsel?" to which the defendant replied, "Yes, I would." The court found that defendant was "alert [and] intelligent," and that "you understand your right to be represented or to represent yourself in trial." The trial court also appointed advisory counsel for defendant, who appeared with him at all subsequent hearings and the jury trial.

Defendant does not suggest that he was unaware of the charges against him or his right to counsel. In his amended motion to dismiss his court-appointed attorney, defendant argued that he had a right to effective representation. The record reflects that defendant objected to testimony, cross-examined both witnesses against him, subpoenaed the Department of Corrections director of parole and community service as his witness, objected to proposed jury instructions ten-

dered by the prosecution, and tendered proposed jury instructions on his own behalf. This indicates defendant had a "broad understanding of the whole matter." *See Arguello, supra.*

Therefore, while it would have been better practice to give defendant a complete *Arguello* advisement at one hearing, we conclude that, under the totality of the circumstances here, the trial court did not err in finding that defendant voluntarily, knowingly, and intelligently waived his right to counsel. *See People v. Smith, supra.*

### III. Jury Instructions

Defendant also argues the trial court erred in instructing the jury to convict him of escape if the prosecution proved that he "failed to remain within the extended limits on his confinement." Defendant asserts that language applies to a crime not charged in this case and that the instruction thus constituted a constructive amendment of the information. We are not persuaded.

■ A constructive amendment "changes an essential element of the charged offense and thereby alters the substance of the charging instrument." *People v. Rodriguez,* 914 P.2d 230, 257 (Colo.1996). "Technical defects in an information do not require reversal unless the substantial rights of the defendant are prejudiced. The defendant is entitled to reversal if he was prejudiced, surprised, or hampered in his defense." *People v. Rodriguez, supra,* 914 P.2d at 259 (quoting *People v. Albo,* 195 Colo. 102, 106, 575 P.2d 427, 429 (1978)).

In *People v. Jefferson,* 934 P.2d 870 (Colo. App.1996), a division of this court held that the information was constructively amended when the jury was given an alternative charge permitting it to find the defendant guilty if he intentionally inflicted serious bodily injury, where the information alleged that the defendant committed the offense by attempting to cause bodily injury by means of a deadly weapon.

In contrast, in *People v. Jones,* 967 P.2d 166 (Colo.App.1997), another division of this court held that a jury instruction giving dates for prior convictions different from those alleged in the information was not a constructive amendment when the information sufficiently apprised the defendant of the charges against him, even though the dates of the prior convictions were incorrect. *See People v. Foster,* 971 P.2d 1082 (Colo.App.1998)(jury instruction on crime of robbery did not constitute a constructive amendment of the charging document where the jury instruction contained the phrase "of another" instead of the victim's name).

■ Here, the information charged defendant with escape pursuant to § 18–8–208 and alleged that on January 1, 1999:

[defendant], while in custody and confinement at Department of Corrections—Intensive Supervision Program following a conviction for First Degree Assault and Attempted Escape, did unlawfully, knowingly and feloniously escape from said custody and confinement;

contrary to the form of the statute in such case made and provided, and against the peace and dignity of the People of the State of Colorado.

The trial court instructed the jury on the elements of escape pursuant to § 18–8–208(2) and also, over defendant's objection, defined custody based on the ISP escape statute: " 'CUSTODY' means if the defendant fails to remain within the extended limits on his confinement as established by the Intensive Supervision Program...." We note that while this definition actually describes escape from custody, both parties treat the definition as defining "custody," and we will do the same.

Defendant contends that this instruction defining "custody" broadened the charge and violated his constitutional rights to notice and to be tried only on the charges brought. We disagree.

On the contrary, the information specifically alleged that defendant escaped while in ISP, and it was undisputed at trial that defendant left Colorado and went to Nevada. Thus, the information sufficiently advised defendant of the nature of the charge, and he was able to defend against it by arguing that he was a parolee serving in a home detention program and that his trip to Nevada consti-

tuted a parole violation. *See People v. Taylor*, 74 P.3d 396, 2002 WL 31834448 (Colo. App. No. 01CA0716, Dec. 19, 2002)(information reciting elements of escape under § 18–8–208 was sufficient, prosecution not required to cite legal definition of escape under ISP statute, and jury was given instruction with that definition). Defendant was neither surprised nor hampered in his defense.

Thus, we find no reversible error. *See People v. Taylor, supra.*

## IV. Nature of Defendant's Prior Convictions

Defendant next contends the trial court erred when it allowed the prosecution to introduce evidence of the nature of his prior convictions over his objection. Specifically, he argues that while the felony status of his prior convictions was admissible, identifying those felonies was unfairly prejudicial because one of his prior offenses was attempted escape. We conclude that any error in this regard was harmless.

A trial court's erroneous evidentiary ruling is not grounds for reversal where the error is harmless. *Salcedo v. People*, 999 P.2d 833, 841 (Colo.2000). "A constitutional error is harmless when the evidence properly received is so overwhelming that such error was harmless beyond a reasonable doubt." *People v. Perry*, 68 P.3d 472, 476, 2002 WL 220850 (Colo.App. No. 98CA2122, Feb. 14, 2002). An error may be harmless where a defendant admits facts that make the improper evidence cumulative. *See People v. Alexis*, 806 P.2d 929, 932 (Colo.1991)(where defendant admitted stealing stereo, introduction of stereo allegedly seized improperly was harmless).

Here, even if we assume that admitting evidence of the nature of defendant's prior convictions was error under *Old Chief v. United States*, 519 U.S. 172, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997), we conclude the error was harmless beyond a reasonable doubt because of the overwhelming evidence of defendant's guilt, including his own testimony. Indeed, defendant testified that "I already had an escape in '91. So I knew all about all of these escape statutes. I knew about all of

the administrative regulations. I knew about it since '91 because I went through it before." During his testimony, defendant also admitted voluntarily leaving for Nevada after he had been placed on ISP.

## V. Absence of Limiting Instruction

Finally, defendant contends the trial court committed plain error when it instructed the jury to consider his prior convictions as substantive evidence of his guilt and placed no limitations on the jury's use of the evidence. Once again, we disagree.

When no contemporaneous objection is made to an asserted error, appellate review is limited to determining whether there is plain error. Plain error "casts serious doubt upon the basic fairness of the trial itself." *Wilson v. People*, 743 P.2d 415, 419–20 (Colo.1987).

Here, defendant did not object to the lack of a limiting instruction, nor did he request one. During the jury instruction conference, he stated, "I don't want, I don't think there's any need for any reference to my priors in the instructions."

The trial court included an instruction that stated, "You may consider convictions that are an element of the charge of Escape as substantive evidence as well as for the credibility of the witness."

Given our conclusion that admitting evidence of the nature of defendant's prior convictions was harmless beyond a reasonable doubt, we similarly conclude that the lack of a limiting instruction does not constitute plain error.

In light of our disposition of this issue, we need not address the People's argument that any error in not giving a limiting instructions was invited by defendant.

The judgment is affirmed.

Judge ROTHENBERG and Judge WEBB concur.