22CA0864 Peo v Parks 11-13-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 22CA0864
City and County of Denver District Court No. 19CR7094
Honorable Adam J. Espinosa, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee and Cross-Appellant,

v.

Aubrey Depriest Parks,

Defendant-Appellant and Cross-Appellee.

---

JUDGMENT AND ORDER AFFIRMED
AND RULING APPROVED

Division III
Opinion by JUDGE DUNN
Lipinsky and Kuhn, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced November 13, 2025

---

Philip J. Weiser, Attorney General, Paul Koehler, Senior Counsel, Denver, Colorado; John Walsh, District Attorney, Richard F. Lee, Senior Deputy District Attorney, Denver, Colorado, for Plaintiff-Appellee and Cross-Appellant

Megan A. Ring, Colorado State Public Defender, Jessica A. Pitts, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant and Cross-Appellee

¶ 1    Defendant, Aubrey Depriest Parks, appeals the judgment of conviction and restitution order entered after a jury found him guilty of second degree assault, third degree assault, and trespassing.  He argues that the district court erred by (1) admitting improper other act evidence; (2) failing to instruct the jury on self-defense as an affirmative defense to third degree assault; (3) failing to completely instruct the jury on self-defense as an affirmative defense to second degree assault; (4) allowing prosecutorial misconduct in closing argument; and (5) awarding restitution to an insurance company.

¶ 2    The People cross-appeal, arguing that the district court erred by failing to instruct the jury on the lawful use of force in defense of premises.

¶ 3    We affirm the judgment of conviction and restitution order and approve the district court's ruling.

## I.    Background

¶ 4    One fall morning, Parks entered a marijuana dispensary while playing loud music.  A security guard asked Parks to turn the music volume down; Parks refused.  The security guard then instructed Parks to leave.  Parks initially headed toward the front

1

door, but after the security guard yelled at Parks to never return, Parks headed back toward the security guard. After exchanging words with the security guard, Parks flipped the security guard's baseball hat off his head. The security guard then grabbed a cup Parks was holding and tried to lead Parks by the arm out the dispensary's back door. As they reached the back door, Parks punched the security guard and the two tumbled through the doorway.

¶ 5    Now outside, the security guard fell against a railing and a surveillance video captured Parks punching and kicking the security guard in the head. The store manager quickly intervened, pulled Parks off the security guard, and tossed him backward onto the ground. The manager stood between Parks and the security guard (who remained crouched against the railing), and asked Parks to leave. Parks threatened to kill the security guard and the manager. Roughly a minute later, another dispensary employee returned the cup to Parks and Parks then punched the manager in the face and left. An employee called 911. Not long after, officers located and arrested Parks.

¶ 6    The assault left the security guard with a fractured orbital bone and a ruptured eyeball.

¶ 7    For this conduct, the prosecution charged Parks with second degree assault against the security guard, third degree assault against the manager, trespassing, and violation of bail bond conditions.[1]

¶ 8    Parks did not testify at trial.  Defense counsel generally denied the trespass charge.  And as to the assault charges, defense counsel argued that Parks acted in self-defense.  The court instructed the jury on self-defense and heat of passion as defenses to the second degree assault charge but denied Parks's request for a self-defense instruction as to the third degree assault charge.

¶ 9    The jury rejected Parks's defenses and convicted him as charged.  The district court imposed a controlling fifteen-year prison sentence.  The court later ordered Parks to make restitution to the insurance company that paid for the security guard's medical bills and lost wages.

---

[1] The prosecution later dismissed the violation of bail bond conditions charge.

## II.    Other Act Evidence

¶ 10    Parks contends that the district court reversibly erred by admitting evidence that Parks threatened police officers after his arrest.  We see no basis for reversal.

### A.    Additional Background

¶ 11    The prosecution did not submit a pretrial notice of intent to introduce other act evidence under CRE 404(b).

¶ 12    At trial, Officer Larry Casados — one of the responding police officers — described his initial contact with Parks.  He testified that Parks was volatile, aggressive, "extremely agitated and very hostile." And he explained that, after officers arrested Parks and placed him in the patrol car, Parks became "more agitated and more hostile, was trying to kick out the windows of the vehicle, threatening to kill me."

¶ 13    At this point, defense counsel objected on relevance grounds. At a bench conference, defense counsel explained that footage from the officer's body camera included the officer's response to Parks's threats: "Go ahead, keep talking; we can add additional charges for threatening a police officer."  Because the prosecution had not filed charges related to the officer, and the officer had already testified to

Parks's demeanor, defense counsel argued that "going into the particulars of any threats" would not be relevant.

¶ 14    The prosecutor responded that the testimony went to Parks's "general demeanor" and to rebut the self-defense claim. She added, "This is this individual's demeanor on that day and his reaction towards authority when he's being told to do things."

¶ 15    Defense counsel confirmed that she was not objecting to testimony about Parks's demeanor but was objecting to "any threats that [Parks] allegedly made to Officer Casados as those don't go to the charges in this case."

¶ 16    The court allowed the testimony about Parks's response to the officer, finding the testimony went "directly to the demeanor of [Parks]" and the contact was within "five to six minutes" of the charged crimes. But the court precluded the prosecution "from eliciting a statement that [Parks] could be charged with threatening an officer."

¶ 17    To avoid any reference to additional, unfiled charges, the court allowed the prosecution to lead the witness. Officer Casados then responded "yes" to the each of following three questions: (1) "[Parks] threatened to kill you?"; (2) "He threatened that multiple times?";

and (3) "At one point he asked you to take the handcuffs off of him so you could fight outside?" We will refer to the officer's collective testimony about the threats as "the statements."

¶ 18 A second responding officer later testified, without objection, that Parks was "somewhat agitated" and "tense" at the scene. At the end of this officer's testimony, the court sustained both parties' objections to a juror's question asking whether "bodycam video" was available "to show interactions between officer and [Parks]?"

¶ 19 During rebuttal closing argument, the prosecutor argued — without objection — that Parks "has a problem with authority, as we could see from the way he responded to [the security guard] and then later on with those police officers."

### B. Legal Principles and Standard of Review

¶ 20 Evidence of other crimes or acts is not admissible "to prove a person's character in order to show that on a particular occasion the person acted in conformity with the character." CRE 404(b)(1). But such evidence is admissible for non-propensity purposes. *Rojas v. People*, 2022 CO 8, ¶ 28; *see also* CRE 404(b)(2). If the other act evidence suggests bad character and is *extrinsic* to the charged offense, Rule 404(b) applies. To be admissible under Rule

6

404(b), such evidence must be (1) logically relevant (2) to a material fact (3) independent of the prohibited inference of the defendant's bad character, and (4) the probative value of the evidence must not be substantially outweighed by the risk of unfair prejudice. *See Rojas*, ¶ 27 (citing *People v. Spoto*, 795 P.2d 1314, 1318 (Colo. 1990)).

¶ 21 But if the acts are *intrinsic*, meaning they either (1) directly prove the charged offense or (2) occurred contemporaneously with it and facilitated its commission, then Rule 404(b) doesn't apply. *Rojas*, ¶ 44. The admissibility of intrinsic evidence is governed by general rules of relevance and prejudice. *See id.* at ¶ 52.

¶ 22 We review a district court's evidentiary rulings, including the admission of other act evidence, for an abuse of discretion. *Perez v. People*, 2015 CO 45, ¶ 22. A court abuses its discretion if its ruling is manifestly arbitrary, unreasonable, or unfair, or if it misapplies the law. *People v. Abdulla*, 2020 COA 109M, ¶ 61.

## C.    Preservation

¶ 23 The parties dispute whether Parks preserved his Rule 404(b) objection. We agree with the People that defense counsel objected

7

only to the relevancy of the statements and that the general relevancy objection was not "specific enough" to alert the district court to the argument Parks now makes on appeal — that the statements were inadmissible under Rule 404(b). *See Martinez v. People*, 2015 CO 16, ¶ 14. And without a specific objection, the district court had no opportunity to make factual findings and legal conclusions on the issue. *See id.*; *see also People v. Rodriguez*, 209 P.3d 1151, 1156 (Colo. App. 2008) (noting that an objection must be specific enough to allow the district court a meaningful chance to "prevent or correct" the error), *aff'd*, 238 P.3d 1283 (Colo. 2010).

¶ 24 Because we are not persuaded that the relevancy objection sufficiently alerted the district court that it should have evaluated the statements under Rule 404(b), we will reverse only if the error was plain, meaning an error occurred, the error was obvious, and "the error's effect is so grave that it undermines the fundamental fairness of the trial itself and casts doubt upon the reliability of the

conviction." *People v. Ambrose*, 2021 COA 62, ¶ 66 (citation omitted).[2]

### D. The District Court Did Not Plainly Err

¶ 25 Because the statements neither directly proved that Parks committed the assaults nor occurred contemporaneously with and facilitated the assaults, we agree with Parks that the statements were extrinsic — not intrinsic — evidence. *See Rojas,* ¶ 52.

¶ 26 But even if we assume that the court obviously erred by admitting the statements under Rule 404(b) — and that may be generous — the statements do not cast serious doubt on the reliability of the conviction. That's because it was undisputed that Parks beat the security guard and punched the manager. The only question for the jury was whether Parks was lawfully defending himself from what he reasonably believed to be the use or imminent use of unlawful physical force. And because the assaults were

---

[2] To the extent Parks contends that his pretrial request for the prosecution to give notice of its intent to introduce other act evidence somehow alerted the district court that it needed to analyze the statements under CRE 404(b), he neither sufficiently develops this argument nor directs us to supporting legal authority. We therefore decline to address it. *See People v. Lowe*, 2021 CO 51, ¶ 20 n.4.

captured on video, the jury didn't need to rely on any testimony or weigh witness credibility to make that determination. Rather, it could independently view the video of the assaults and assess the actions of all involved. Parks's post-assault statements shed no light on his self-defense claim and are unimportant given the video evidence.[3]

¶ 27    Still, Parks argues that the admission of the statements requires reversal because they were unaccompanied by a limiting instruction. But defense counsel didn't ask for a limiting instruction, and a court is under no obligation to sua sponte issue one that isn't otherwise required by statute.[4] *People v. Griffin*, 224 P.3d 292, 298 (Colo. App. 2009); *see also People v. Clark*, 2015 COA 44, ¶ 135 (concluding that the lack of a limiting instruction wasn't error when defense counsel neither requested one nor offered any legal support showing that one was required).

---

[3] Parks doesn't argue that the statements had any bearing on the trespass charge.

[4] Even beyond not requesting a limiting instruction, during trial, defense counsel agreed with the prosecutor to remove a limiting instruction from the original set of proposed instructions.

¶ 28    We are equally unpersuaded by Parks's contention that reversal is required because the prosecutor made an improper propensity argument in rebuttal closing by saying that Parks "has a problem with authority, as we could see from the way he responded to [the security guard] and then later on with those police officers." The prosecutor referenced Parks's general demeanor and reaction to the officers, not the statements. *See People v. Constant*, 645 P.2d 843, 846 (Colo. 1982) (noting that a prosecutor may draw reasonable inferences as to the demeanor of a witness).

¶ 29    Finally, we reject Parks's claim that he suffered prejudice because a juror asked whether a bodycam video was available to show "interactions between officer and [Parks]?" Not only did the court not ask the question, but the question was not directed at Officer Casados. Rather, it was directed at the second responding officer, who did not testify about the statements.

¶ 30    For these reasons, even if we assume the court erred by admitting the statements, the error wasn't plain.

### III. Self-Defense Instruction – Third Degree Assault

¶ 31    Parks contends that the district court erred by refusing his request to instruct the jury on self-defense as an affirmative defense to the third degree assault charge involving the manager.

¶ 32    A person has a right to use physical force against another person to defend himself from what he reasonably believes to be the use or imminent use of unlawful physical force by that other person, and he can use a degree of force that he reasonably believes is necessary for that purpose. *People v. Opana*, 2017 CO 56, ¶ 9; *see also* § 18-1-704(1), C.R.S. 2025. This reasonable belief standard is an objective one; while it accounts for the defendant's state of mind, it "ultimately requires that a reasonable person would have believed and acted as the defendant did." *People v. Martinez*, 2022 COA 111, ¶ 36, *aff'd*, 2024 CO 48.

¶ 33    A court must instruct the jury on a requested affirmative defense if there is "some credible evidence" to support the defense. *Pearson v. People*, 2022 CO 4, ¶ 16 (quoting § 18-1-407(1), C.R.S. 2025). While this threshold is low, "it is not negligible." *Opana*, ¶ 17.

¶ 34    Whether a defendant meets this burden is a question of law that we review de novo, in the light most favorable to the defendant. *People v. Coahran*, 2019 COA 6, ¶ 15.

¶ 35    The surveillance video shows that, while Parks was beating the security guard outside the dispensary, the manager came out, pulled Parks off the security guard, and tossed Parks backward. After stopping the assault on the security guard, the manager stood between Parks and the security guard but did not touch Parks. The video shows Parks and the manager exchanging words and, during some of the encounter, the manager — who is shorter than Parks — is partially turned sideways away from Parks and using his arm as a barrier to prevent Parks from getting close to him. Though Parks approached the manager during a portion of the post-assault encounter, the manager never touched Parks. Around forty-five seconds after the manager stopped the assault on the security guard, another employee returned a cup to Parks. Parks then punched the manager in the face and walked away. The manager's hands were not raised when Parks punched him. Thus, at the time Parks assaulted him, no evidence showed that the manager was "using or reasonably appear[ed] about to use physical force against

13

[Parks]." *People v. Jones*, 2023 COA 104, ¶ 34 (citation omitted); *see also id.* ¶¶ 29-34 (upholding the court's refusal to instruct on self-defense when unsupported by the evidence).

¶ 36    We therefore conclude that the court did not err by declining to instruct the jury on self-defense as an affirmative defense to third degree assault.[5]

> IV.    Self-Defense Instruction – Second Degree Assault

¶ 37    Parks contends that the district court erred by declining his tendered multiple assailants self-defense instruction (supplemental instruction).

¶ 38    In connection with the second degree assault charge involving the security guard, Parks asked the court to instruct the jury as follows:

> When a person has reasonable grounds to believe that he is faced with multiple assailants or potential assailants, he may legitimately act in defense of a person against any of those who he reasonably perceives to be an assailant or potential assailant.
>
> In determining whether [Parks] reasonably believed that defensive action was necessary and in determining whether [Parks] used a

---

[5] Even without the instruction, defense counsel generally argued that Parks was defending himself throughout the encounter.

reasonable degree of force, you must consider the totality of the circumstances, including the number of persons reasonably appearing to be threatening [Parks].

¶ 39     Finding no "reasonable grounds to believe" that Parks faced multiple assailants while interacting with the security guard, the court declined the supplemental instruction.  But the court instructed the jury on self-defense as an affirmative defense to the second degree assault charge.  That instruction tracked the Colorado model jury instructions on self-defense.

¶ 40     The court must correctly instruct the jury on all applicable matters of law.  *People v. Roberts-Bicking*, 2021 COA 12, ¶ 17.  If the court did so, then we review its decision not to give a particular instruction for an abuse of discretion and will not disturb that decision unless it is manifestly arbitrary, unreasonable, or unfair.  *Id.*

¶ 41     The evidence did not support the supplemental instruction.  No evidence was presented showing that Parks faced multiple assailants (or multiple potential assailants).  Parks himself doesn't identify anyone else who was present during his confrontation with the security guard.  And the video confirms that only Parks and the

security guard were present during their exchange inside the dispensary. Similarly, the video shows Parks beating the security guard outside the dispensary with no other individuals around. While the manager eventually pulled Parks off the security guard, that wasn't part of the assault; it ended the assault. *Cf. People v. Green*, 2012 COA 68M, ¶ 19 ("Because there was no evidence [supporting the defendant's tendered possessory rights instruction], we conclude that the district court did not err by refusing to give the requested instruction.").[6]

¶ 42    The court therefore did not err by declining the supplemental self-defense instruction.

## V.    Prosecutorial Misconduct

¶ 43    Parks contends that the prosecutor made multiple improper comments during closing argument that, if not individually, then cumulatively, require reversal. We disagree.

---

[6] To the extent Parks argues that the court erred by failing "to instruct the jury that it should consider reasonable appearances and the totality of circumstances when determining whether Parks acted in self-defense," he provides no authority to suggest that such instructions are required independent from a multiple assailant instruction. Because the evidence did not support a multiple assailant instruction, we don't address this argument further.

## A.     Legal Principles and Standard of Review

¶ 44     We apply a two-step analysis to claims of prosecutorial misconduct. *Wend v. People*, 235 P.3d 1089, 1096 (Colo. 2010). We first determine "whether the prosecutor's questionable conduct was improper based on the totality of the circumstances." *Id.* If it was improper, we then determine whether the misconduct warrants reversal. *Id.*

¶ 45     Because Parks didn't object to any of the prosecutor's statements, we review for plain error. *People v. Licona-Ortega*, 2022 COA 27, ¶ 88. Only misconduct that is "flagrantly, glaringly, or tremendously improper" warrants reversal under the plain error standard. *Domingo-Gomez v. People*, 125 P.3d 1043, 1053 (Colo. 2005) (citation omitted); *see also People v. Smalley*, 2015 COA 140, ¶ 37 ("Prosecutorial misconduct in closing argument rarely constitutes plain error.").

## B.     Misstatement of the Law

¶ 46     At Parks's request and over the prosecutor's objection, the court instructed the jury on the heat of passion mitigator to the second degree assault charge. Addressing heat of passion in her

17

closing argument, the prosecutor argued that the mitigator did not apply:

> Because for heat of passion to apply, for [Parks] to have committed second-degree assault under heat of passion, you would have to find that the injury was performed on a sudden heat of passion and that the sudden heat of passion was caused by a serious and highly provoking act of the intended victim.
>
> There is no basis to find that there was a serious and highly provoking attack by [the security guard]. Fuck you, get the fuck out, you're 86ed, no, that is not a serious and highly provoking act. Those words happen all of the time in our society. *It does not give you the right to beat someone until their orbital bone is broken.*
>
> Is a highly provoking act opening the door and pointing it out? No. Is a highly provoking act taking your plastic Broncos cup? Are you kidding? No. A highly provoking act — taking you gently by the hand with such a light grip that you pull back without a problem and then punch someone in the face is not a highly provoking act. This does not meet this definition at all.

(Emphasis added.)

¶ 47 Parks now objects to the italicized portion of the argument, saying it misstated the law on heat of passion because the

"reasonableness of the amount of force is not a limitation of the heat-of-passion mitigator."

¶ 48     But a prosecutor may properly argue facts in evidence and any reasonable inferences drawn therefrom. *Domingo-Gomez,* 125 P.3d at 1048. When viewed in context, the prosecutor was simply explaining why the evidence did not support the heat of passion mitigator. The focus was not so much on the force used but that the mitigator did not apply because the security guard did nothing to provoke any use of force. These comments were proper.

### C.     Misstatement of the Facts

¶ 49     Pointing to the initial stages of Parks's interaction with the security guard, defense counsel argued in closing argument that Parks acted in self-defense. Defense counsel specifically argued that the security guard "provoked" Parks through words and actions, including "grabbing his arm, grabbing his cup, and trying to force him out the back door." Continuing that theme, defense counsel argued that Parks was justified in defending himself when the security guard grabbed him and tried to force him out the door.

¶ 50     In rebuttal closing argument, the prosecutor responded:

19

> We heard a lot about self-defense. These are the elements you're going to have to look at. It is our responsibility . . . to disprove this beyond a reasonable doubt.
>
> . . . .
>
> Now, [defense counsel] talked a lot about what happened with [the security guard] that led to happening — to there. We have the actions and the words. So let's talk about those actions. Grabbing a cup and snatching a cup, that is what caused [Parks] to think he needed to act in self-defense.
>
> . . . .
>
> Did he reasonably believe that grabbing a cup was something that he needed to defend himself from?
>
> . . . .
>
> We don't teach children if another kid takes your toy away, you're allowed to clock him in the face.

¶ 51 Parks now objects that, by not also referencing the evidence that the security guard grabbed Parks's arm, the prosecutor "misled the jury on the key fact of the case." But the prosecutor was free to challenge Parks's theory of self-defense. And the prosecutor didn't argue facts not in evidence or misstate the facts she did argue. That the prosecutor didn't address every piece of evidence that

supported Parks's defense theory doesn't make the argument improper; it simply makes it incomplete. *See Domingo-Gomez*, 125 P.3d at 1048 (explaining that, during closing argument, counsel may "point to different pieces of evidence and explain their significance within the case"). The comments were not improper.

### D. Arguments Calculated to Elicit Sympathy

¶ 52 The security guard testified at trial that he had not watched the video of the assault, he didn't want to watch it, and he didn't "think watching [himself] on video getting pummeled on is healthy."

¶ 53 The prosecutor later referenced that testimony during closing argument, commenting, "[The security guard] told you, still to this day, he cannot watch the video of what happened to him because why would he want to watch that?"

¶ 54 Though Parks argues this argument was calculated to elicit sympathy, it was an argument directly tethered to the facts in evidence. It was therefore proper.

### E. Propensity Argument

¶ 55 Parks contends that the prosecutor made an improper propensity argument in rebuttal closing by saying that Parks "has a

problem with authority, as we could see from the way he responded to [the security guard] and then later on with those police officers."

¶ 56    But as we have already discussed, this was not a propensity argument; it was a proper comment on the evidence. The security guard testified to Parks's reaction when the security guard asked him to turn down the music and later leave the dispensary. Both officers testified to Parks's demeanor when they contacted him. And the prosecutor never referenced the threats Parks made to Officer Casados. These comments weren't improper.

### F.    Cumulative Prosecutorial Misconduct

¶ 57    Because we conclude that no prosecutorial misconduct occurred, we necessarily reject Parks's contention that cumulative prosecutorial misconduct requires reversal. *See Howard-Walker v. People*, 2019 CO 69, ¶ 24.

### VI.    Restitution

¶ 58    Finally, Parks contends that the district court erred by awarding restitution to the insurance company that reimbursed the security guard for medical bills and lost wages. He contends that an insurance company is not a victim under the plain language of the restitution statute.

22

¶ 59     This argument, however, has been considered and rejected by two divisions of this court. *See People v. Martinez*, 2022 COA 28, *aff'd on other grounds*, 2024 CO 6M; *People v. Oliver*, 2016 COA 180M; *see also People v. Lockett*, 2025 COA 1, ¶ 21 (concluding that an insurance company may be entitled to restitution as a victim for indemnification losses incurred related to a nonfelony traffic crime).

¶ 60     *Martinez* is particularly instructive. There, the division rejected the contention that an insurance company was not a victim under the restitution statute. In doing so, it considered the plain language of the restitution statute, the historical amendments to the restitution statute, the purpose of the restitution statute, and the fact that we liberally construe the restitution statute to accomplish its goals. *Martinez*, ¶¶ 32-51.

¶ 61     Although Parks disagrees with *Martinez* (and *Oliver*), we do not. These opinions are well reasoned and rooted in the statutory language. We therefore decline Parks's invitation to depart from them, and we affirm the restitution order.

## VII.   The Cross-Appeal

¶ 62     The People cross-appeal the district court's refusal to instruct the jury on lawful use of force in defense of premises. Although

23

they prevailed at trial, they now ask us to disapprove this ruling, which they are entitled to do under section 16-12-102(1), C.R.S. 2025.

## A. Additional Background

¶ 63  After the district court agreed to instruct the jury on self-defense as to Parks's assault on the security guard, the prosecution asked the court to instruct the jury on the security guard's right to use physical force in defense of premises. The prosecution argued that because the security guard had the right to use lawful physical force to "eject" Parks from the dispensary (if the jury agreed that Parks was an unlawful trespasser), the instruction was necessary to allow the jury to evaluate whether Parks was entitled to use force in self-defense. The prosecution specifically requested that the court instruct the jury:

> The victim was legally authorized to use physical force upon another person if:
>
> 1.    The victim was in possession or control of any building, realty, or other premises, or was a person licensed or privileged to be there, and
>
> 2.    The victim used reasonable and appropriate physical force, when and to the extent it was reasonably necessary to prevent or terminate what he reasonably believed was

the commission or attempted commission of an unlawful trespass by the other person in or upon the building, realty, or premises.

For purposes of this instruction, a person commits an unlawful trespass if he unlawfully enters or remains in or upon any premises of another.

¶ 64 The prosecution clarified that the instruction was not offered as an affirmative defense — because no charges were filed against the security guard — but rather "as a definition to provide the jury with context" to determine whether the force the security guard used was lawful.

¶ 65 Defense counsel objected to the instruction, arguing that it would shift the focus from Parks's reasonable belief to the security guard's reasonable belief and that it would likely "confuse or mislead the jury and lessen the prosecution's burden of proof to disprove the affirmative defense of self-defense beyond a reasonable doubt." But defense counsel confirmed that Parks was not contesting that the security guard had a right to remove people from the premises by "ejecting" or "dragging" them out.

¶ 66 The court denied the instruction because it was concerned that the instruction would unduly emphasize a particular piece of

undisputed evidence — the security guard's authority to remove trespassers from the property. The court added, however, that the prosecution could argue in closing argument that the security guard's conduct was lawful.

¶ 67 The prosecution argued in closing that the security guard had the right to eject Parks and did not use unlawful physical force when he led Parks to the back door.

### B. Legal Principles and Standard of Review

¶ 68 A person may use physical force upon another person to defend himself "from what he reasonably believes to be the use or imminent use of *unlawful physical force* by that other person." § 18-1-704(1) (emphasis added). A person may also use "reasonable and appropriate physical force upon another person when and to the extent that it is reasonably necessary to prevent or terminate what he reasonably believes to be the commission or attempted commission of an unlawful trespass." § 18-1-705, C.R.S. 2025. But "trespassers do not forfeit their rights to self-defense merely by the act of trespassing." *People v. Toler*, 9 P.3d 341, 352 (Colo. 2000). Instead, a trespasser may only use physical force in self-defense when confronted with *unlawful* physical force. *See id.*

at 347-53. Self-defense is therefore not available as an affirmative defense if the victim's use of force was lawful. *See id.*; *see also* § 18-1-704(1).

¶ 69 We review "instructions de novo to determine whether they accurately inform the jury of the governing law," *Hoggard v. People*, 2020 CO 54, ¶ 12, but we review a court's decision to give, or not to give, a particular jury instruction for an abuse of discretion, *People v. Sanders*, 2022 COA 47, ¶ 34, *aff'd on other grounds*, 2024 CO 33. "If the instructions, taken as a whole, properly instructed the jury on the governing law, there is no error." *People v. Bryant*, 2018 COA 53, ¶ 85; *see also People v. Inman*, 950 P.2d 640, 645 (Colo. App. 1997) ("[A district] court may properly refuse an instruction which merely restates points already encompassed in other instructions given to the jury . . . .").

### C. The Court Didn't Abuse Its Discretion by Declining the Prosecution's Defense of Premises Instruction

¶ 70 The People seem to argue that defense of premises is an exception to self-defense and the court "must instruct" on any exception to the affirmative defense of self-defense supported by the

27

evidence. While as a general proposition that may be true, it's beside the point.

¶ 71 The prosecution did not tender the defense of premises as an affirmative defense to self-defense. Nor could it be an affirmative defense because no charges were filed against the security guard and the security guard did not admit criminal conduct. *See People v. Gallegos*, 2025 CO 41M, ¶ 13 (explaining that an affirmative defense admits the defendant's commission of the charged crime "but seeks to justify, excuse, . . . mitigate," or alleviate the commission of the crime (citation omitted)). Rather, the prosecution offered the instruction "as a definition to provide the jury with context" to determine whether the force the security guard used was lawful.

¶ 72 But the "context" was simply that the security guard had the right to use lawful force against a trespasser. And the self-defense instruction already informed the jury that Parks was only allowed to use physical force against the security guard's *unlawful* use of force. That the guard asked Parks to leave and then attempted to escort Parks to the back door didn't change the fact that the jury still had to evaluate whether the security guard used lawful or

28

unlawful force against Parks. No one suggested that the security guard could use unlawful force against Parks, even if Parks was trespassing.

¶ 73 Because the self-defense instructions adequately covered the prosecution's proposed "definition" of lawful physical force, the court didn't abuse its discretion by declining that instruction. *See Bryant*, ¶ 85; *Dunton v. People*, 898 P.2d 571, 573 (Colo. 1995) (concluding that the district court was not required to give a requested instruction on an affirmative defense to sexual assault when the elemental instruction necessarily required disproof of the elements of the affirmative defense).[7]

¶ 74 Because the instruction wasn't legally required under the circumstances presented at trial, we approve the ruling.

---

[7] The converse is also true. The court would have been within its discretion to instruct the jury on the definition. *See People v. Palacios*, 2018 COA 6M, ¶ 18 (when assessing for abuse of discretion, "we look to whether the [district] court's decision fell within a range of reasonable options"); *cf. People v. Hayward*, 55 P.3d 803, 805 (Colo. App. 2002) (concluding that the district court did not err by instructing the jury on the victim's right to defend herself under the force-against-intruders statute).

## VIII. Disposition

¶ 75    The judgment and restitution order are affirmed.  The ruling is approved.

JUDGE LIPINSKY and JUDGE KUHN concur.