**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Zachariah GARCIA, Defendant–Appellant.**

No. 99CA2360.

Colorado Court of Appeals, Div. I.

Jan. 17, 2002.

---

Certiorari Denied·March 10, 2003.*

* Justice COATS does not participate.

Ken Salazar, Attorney General, Michelle L. Prince, Assistant Attorney General, Denver, CO, for Plaintiff–Appellee.

Brenda M. Sauro, LLC, Brenda M. Sauro, Littleton, CO, for Defendant–Appellant.

Opinion by Judge METZGER.

Defendant, Zachariah Garcia, appeals the judgment of conviction entered on a jury verdict finding him guilty of escape. He also appeals the sentence imposed. We affirm.

Defendant was discharged from the Department of Corrections (DOC) in August 1998, after serving the full two and one-half years of his sentence to imprisonment. Pursuant to § 18–1–105, C.R.S.2001, defendant was then placed on mandatory parole for two years. As a condition of his parole, the parole board ordered defendant to complete 120 days in an Intensive Supervision Program (ISP).

Before beginning his period of parole, defendant signed a Parole Agreement/Order, which stated in relevant part:

Parolee will abide by all conditions of parole set forth in this agreement and any additional conditions and directives set forth by Parole Officer, consistent with the laws of the State of Colorado. Any violation of this agreement and/or any conditions thereof, can lead to the revocation of parole.

Defendant also signed two documents listing the "additional conditions and directives" of his parole. One document, entitled "Directive Intensive Supervision Program Englewood Parole," provided:

I. You are restricted to the Denver Metropolitan Area and may not leave this area without the knowledge and consent of your Parole Officer.

II. You are directed to report in person to your Parole Officer each Wednesday....

The other document, entitled "Intensive Supervision Program," contained the acknowledgement:

I therefore, clearly understand that should I leave my designated residence of record [in Englewood] for my ISP confinement, for an excess of 24 hours, I am therefore, liable for prosecution, conviction, and punishment for Felony Escape, C.R.S.: 17–27.5–104 and C.R.S.: 18–8–208.

Defendant failed to report to his parole officer after November 1, 1998. He was apprehended on December 5, 1998, in another city, later convicted of felony escape, and sentenced to five years in DOC consecutive to the sentence he was already serving, plus five years of mandatory parole.

## I.

Defendant argues the trial court erred in determining that the ISP statute, § 17–27.5–104, C.R.S.2001, and the escape statute, § 18–8–208(2), C.R.S.2001, apply to mandatory parolees. We find no error.

## A.

First, we reject defendant's argument the parole board does not have the authority to place mandatory parolees in an ISP program.

Interpretation of a statute is a question of law, which we review de novo. *See Hendricks v. People,* 10 P.3d 1231 (Colo. 2000).

When construing a statute, we must ascertain and give effect to the intent of the General Assembly. Thus, we must read the statute as a whole and interpret it so as to give a consistent, harmonious, and sensible effect to all its parts. *See Charnes v. Boom,* 766 P.2d 665 (Colo.1988). Further, in construing a statute, we must avoid an interpretation that leads to an absurd result. *See State v. Nieto,* 993 P.2d 493 (Colo.2000).

In interpreting a comprehensive statutory scheme such as the parole statutes, *see Charnes v. Boom, supra,* we must construe each provision to effectuate the overall legislative intent. *A.B. Hirschfeld Press, Inc. v. City & County of Denver,* 806 P.2d 917 (Colo. 1991).

As explained in the Hearing on H.B. 93–1302 before the House Judiciary Committee, 59th General Assembly, 1st Regular Session (Feb. 16, 1993), a significant element of the legislative intent underlying the mandatory parole statutes is to ensure postincarceration supervision of offenders who are released after completion of their entire sentence to incarceration.

Section 17–27.5–106, C.R.S.2001, authorizes the parole board to supervise parolees through the use of ISPs: "An offender who is granted parole or whose parole is modified may be required by the state board of parole, as a condition of such parole, to participate in an intensive supervision program as defined by this article...."

Defendant contends the phrase "granted parole" in § 17–27.5–106 is synonymous with "granted early release." Therefore, he argues, § 17–27.5–106 applies only to discretionary parolees released before completion of their sentence to imprisonment, and not to mandatory parolees, like himself, who have discharged their sentence to imprisonment. We do not agree.

In 1993, the General Assembly adopted mandatory parole for convicted felons. *See* Colo. Sess. Laws 1993, ch. 322, § 18–1–105(1)(a)(V) at 1981–83. The supreme court

has described the effect of this legislation as follows:

> Under the new scheme of mandatory parole, the legislature adopted section 18–1–105(1)(a)(V), which detailed the length of mandatory periods of parole for felons, basing the length of the parole periods on the class of felony for which the individual was convicted. Accordingly, the length of prison terms and parole terms became separate components of the penalty imposed by the court. Each penalty included not only a determinate sentence of imprisonment, but also a pre-determined period of parole.
>
> This new scheme of pre-determined, or mandatory, parole eliminated the authority of the state board of parole to determine the length of parole terms for most offenders.

*Martin v. People,* 27 P.3d 846, 850 (Colo. 2001) (citation omitted).

The mandatory parole statute, § 18–1–105(1)(a)(V)(D), C.R.S.2001, provides, in relevant part:

> When an offender is released by the state board of parole or released because the offender's sentence was discharged pursuant to law, the mandatory period of parole shall be served by such offender.

The only practical way to interpret the phrase "granted parole" in § 17–27.5–106 and to give all parts of the statutory scheme dealing with parole a sensible and harmonious effect, is to construe the term to mean "placed on parole" or "paroled."

Section 17–2–201, C.R.S.2001, establishes the state parole board. Section 17–2–201(9)(b), C.R.S.2001, mandates certain procedures for revoking parole. Section 17–22.5–403(8)(a), C.R.S.2001, requires the parole board to provide parole supervision and assistance and authorizes the parole board to continue, modify, or revoke parole when an offender violates a condition of parole. Section 17–2–201(5)(f), C.R.S.2001, sets forth the conditions of parole each parolee must agree to and sign.

■ Unless the term "grant parole" is construed to apply to all parolees, these provisions would become meaningless, and the state parole board would have no authority to supervise or penalize mandatory parolees. This would lead to the absurd result that mandatory parolees would not be subject to supervision while discretionary parolees would. That result would directly contravene the legislative intent underlying the mandatory parole scheme. Therefore, we construe the term "granted parole" in § 17–27.5–106 to include both mandatory and discretionary parole.

### B.

We reject defendant's argument that mandatory parolees are not in the custody or confinement of the DOC for purposes of application of the escape statute.

The escape statute, § 18–8–208(2), provides that "[a] person commits a class 3 felony if, while being in custody or confinement following conviction of a felony other than a class 1 or class 2 felony, he knowingly escapes from said custody or confinement."

With some exceptions not relevant here, every DOC sentence consists of a period of imprisonment and a period of mandatory parole. *See* § 18–1–105(1)(a)(V)(D); *see also Martin v. People, supra; Craig v. People,* 986 P.2d 951 (Colo.1999). Parole is merely a grant of permission to serve the remainder of a sentence outside the prison walls, but the offender remains under the supervision of the Department of Corrections. *See People v. Barth,* 981 P.2d 1102 (Colo.App.1999). "Offenders on parole shall remain under legal custody and shall be subject at any time to be returned to a correctional facility." Section 17–2–207(3), C.R.S.2001.

■ These authorities persuade us that mandatory parolees, like defendant, are in custody for purposes of the escape statute, § 18–8–208(2).

Moreover, we note that defendant signed an "additional condition and directive" of his parole in which he acknowledged that he "clearly" understood that, if he left his designated residence of record for twenty-four hours, he was "liable for prosecution, conviction, and punishment for Felony Escape ... [pursuant to § ] 18–8–208." This agreement

by defendant forecloses any further challenge. *See People v. Williams*, 33 P.3d 1187 (Colo.App.2001)(*cert. granted* Nov. 13, 2001); *see also People v. Lanzieri*, 25 P.3d 1170 (Colo.2001).

## II.

Defendant raises several constitutional challenges to § 17–27.5–106, which authorizes the parole board to use ISPs in its supervision of parolees, and to § 17–27.5–104, which treats a parolee's failure to remain in the extended limits of his confinement as an escape. We consider defendant's arguments seriatim.

## A.

■ Defendant contends § 17–27.5–106 violates his right to equal protection by allowing some parolees to be placed in an ISP and others not to be so placed. We disagree.

Section 17–27.5–106 authorizes the parole board to use ISPs. Section 17–27.5–102(3), C.R.S.2001, outlines the criteria for selecting offenders for transfer to an ISP.

In *People v. Williams, supra*, a division of this court held the ISP statute did not violate the defendant's right to equal protection. The division reasoned the General Assembly intended that the authorization in § 17–27.5–106 to use ISPs would incorporate the standards and criteria in § 17–27.5–102(3) for selecting parolees for placement in an ISP. It concluded that, because the statutory scheme is reasonably related to the legitimate government objective of supervising at-risk mandatory parolees, no equal protection violation exists. *People v. Williams, supra*, 33 P.3d at 1189–90.

We adopt this analysis and hold that § 17–27.5–106 does not violate defendant's right to equal protection.

## B.

■ We decline to address defendant's constitutional challenges to § 17–27.5–104. Defendant argues the statute does not define with sufficient clarity the critical element of "extended limits of confinement" and thus violates his right to procedural due process

under the Fifth and Fourteenth Amendments and Colo. Const. art II, §§ 16, 25. He also asserts the statute violates the prohibitions in the Fifth and Fourteenth Amendments against double jeopardy, the notice requirement of procedural due process, and the separation of powers and nondelegation doctrines in Colo. Const. art. III.

Defendant concedes he failed to raise his clear definition and double jeopardy arguments in the trial court, but contends these arguments involve jurisdictional questions that he may properly raise for the first time on appeal. He also argues that principles of judicial economy require us to address and decide all of his issues at this time. However, these same arguments were rejected in *People v. Williams, supra*, and we do likewise.

Defendant also failed to raise in the trial court the issue whether the ISP statute violated his procedural due process right to notice of the prohibited conduct. Defendant's written motion for dismissal states only: "The Defendant has been subject to the above noted ... Constitutional Deprivations of his rights secured under the Due Process Clause of the 14th Amendment...." The only "above noted" deprivation of rights was an allegation that the parole board did not have authority to place him in an ISP. This allegation is different from the notice argument defendant now makes. Accordingly, we decline to address his new argument here. *See People v. Williams, supra*.

Finally, defendant failed to raise in the trial court the issue whether the ISP statute violates the separation of powers and nondelegation doctrines. Defendant's written motion argued that, by placing him in an ISP, the parole board "has exercised an improper Quasi Judicial Function, which has in effect increased the Quantum of Punishment mandated by the Sentencing Court." Even if we assume this statement was sufficient to raise a separation of powers question, it did so only in a cursory manner; therefore, we will not address it here. *See People v. Williams, supra*.

## III.

Defendant next contends he was denied effective assistance of counsel because the trial court forced him to proceed pro se, even though good cause existed for substitution of counsel. We disagree.

■ We review a trial court's decision to deny an indigent defendant's request for substitution of counsel under an abuse of discretion standard. *See People v. Apodaca*, 998 P.2d 25 (Colo.App.1999).

■ When a defendant voices objections to court-appointed counsel, the trial court must inquire into the reasons for the dissatisfaction. If the defendant establishes good cause, such as a conflict of interest or a complete breakdown in communication, the court must appoint substitute counsel. However, before change of counsel is warranted, the court must verify the defendant has "some well founded reason for believing that the appointed attorney cannot or will not completely represent him." *See People v. Arguello*, 772 P.2d 87, 94 (Colo.1989)(quoting 2 W. LaFave & J. Israel, *Criminal Procedure* 37 (1984)).

■ If the court has a reasonable basis for concluding the attorney-client relationship has not deteriorated to the point where counsel is unable to give effective assistance, the court is justified in refusing to appoint new counsel. *People v. Schultheis*, 638 P.2d 8 (Colo.1981). If the court determines substitution is not warranted, it may insist the defendant choose between continued representation by existing counsel and appearing pro se. Before a defendant chooses to proceed pro se, the court must provide sufficient information about the dangers and disadvantages of self-representation so the record will establish the defendant knows what he or she is doing and makes a choice with his or her eyes open. *People v. Arguello, supra.*

■ While a pro se defendant has no constitutional right to advisory counsel, the court may appoint such counsel. However, a defendant has no claim against advisory counsel for ineffective assistance unless counsel acts beyond his or her advisory role. *See Downey v. People*, 25 P.3d 1200 (Colo.2001).

■ Here, defendant filed a pro se motion asking the court to dismiss the public defender's office as counsel and to appoint private counsel. He alleged his current counsel had "refused and failed to spend a reasonable, adequate, and necessary amount of time ... to go over potential defenses." He also alleged counsel had failed to conduct an investigation into "the potential facts and or legal defenses" and had "created conflict" by "refusing to file motions the Defendant ask[ed] of him" and "by repeatedly telling the Defendant 'there is nothing you can do.' " The court conducted a hearing on defendant's motion on April 26, 1999.

On questioning defendant, the court discovered that his dissatisfaction with counsel stemmed primarily from the attorney's refusal to prepare a defense on the issue whether the escape statute applied to a mandatory parolee. The court had previously rejected defendant's pro se motion to dismiss the case on that ground. The court explained to defendant that his theory was not a good one. Defendant replied, "I'd rather represent myself pro se than have the public defender's office." The court cautioned defendant, "Well, that's up to you. It's your right if you want to do that. But Mr. Garcia, it's not a good idea." Ultimately, defendant agreed to meet with another attorney from the public defender's office, "to see if me and her come to an agreement."

Defendant renewed his motion to dismiss counsel on May 18, 1999, and said he wished to proceed pro se. Counsel told the court the conflict stemmed from their continuing disagreement about whether defendant could pursue a defense based on the theory the escape statute did not apply to him. The court explained the dangers of proceeding pro se:

> You have a right to do that if you want to. It's not a very intelligent thing to do, because someone compares it to like a surgeon or a layperson operating and doing surgery on themselves, it's something beyond their skill. There are all sorts of rules of evidence and all sorts of procedures that you just simply couldn't have

the means to deal with at this point. So you are likely to become very frustrated in trying to represent yourself.

The court also told defendant, "[C]ertain matters that you think might constitute a defense may not constitute defenses and the Court will not let you pursue them." Nevertheless, defendant persisted in his request, and ultimately the court allowed him to proceed pro se and appointed advisory counsel to assist him.

The trial court did not abuse its discretion in denying defendant's motion to appoint private counsel. The conflict between defendant and the public defender's office was a disagreement over strategy, and therefore was not a "well-founded reason for believing that the appointed attorney cannot or will not completely represent him" as described in *People v. Arguello, supra,* 772 P.2d at 94. Further, the trial court took the necessary precautions to provide defendant with sufficient information about the dangers and disadvantages of self-representation. The court explained to defendant that his theory of the case was not sound and it would not allow him to develop that argument. The court also strongly cautioned him about the dangers of presenting his case pro se. Nevertheless, in two separate hearings, defendant repeatedly stated his desire to defend himself. Having elected to do so, defendant cannot now claim ineffective assistance of counsel for his own efforts or for the efforts of advisory counsel.

## IV.

Finally, defendant contends the trial court committed reversible error when it concluded it was required to impose a consecutive sentence. We disagree.

"Any sentence imposed following conviction of an offense under sections 18–8–201 to 18–8–208 or section 18–8–211 shall run consecutively and not concurrently with any sentence which the offender was serving at the time of the conduct prohibited by those sections." Section 18–8–209, C.R.S.2001.

Here, at the time of his escape, defendant was serving his sentence to mandatory parole. The trial court concluded it was re-

quired to impose a consecutive sentence because defendant had been convicted under § 18–8–208(2).

 Because we determined in Part I.B above that a period of mandatory parole is a part of a defendant's sentence, we agree with the trial court that it was required to impose a consecutive sentence for defendant's escape conviction. *See People v. Luther,* 43 P.3d 660 (Colo.App.2001).

The judgment and sentence are affirmed.

Judge NEY and Judge TAUBMAN concur.