**The PEOPLE of the State of Colorado,**
**Plaintiff–Appellee,**

v.

**Marchell TAYLOR, Defendant–Appellant.**

**No. 01CA0716.**

Colorado Court of Appeals,
Div. I.

Dec. 19, 2002.

As Modified on Denial of Rehearing
Jan. 16, 2003.

Certiorari Denied July 28, 2003.

Ken Salazar, Attorney General, John D. Seidel, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

David S. Kaplan, Colorado State Public Defender, Elizabeth Griffin, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge GRAHAM.

Defendant, Marchell Taylor, appeals the judgment of conviction entered on a jury verdict finding him guilty of escape from custody, a class three felony. We affirm.

Defendant previously was convicted of a class five felony nonviolent offense. He was granted Intensive Supervision Parole (ISP) in April 1997. In October 1997, a parole officer and defendant reviewed and discussed documents containing both the terms of parole and an advisement that defendant could be prosecuted for felony escape if he left his

designated residence and ISP confinement for more than twenty-four hours.

In February 1998, an administrative law judge (ALJ) held a hearing regarding defendant's alleged "technical parole violations." The ALJ found defendant in violation and ordered him to spend an additional 120 days in the ISP and to enroll in the Residential Treatment Center (RTC) in Greeley, a therapeutic community providing drug and alcohol treatment. Defendant entered the RTC on February 27, 1998.

On February 28, 1998, an RTC counselor discovered defendant was missing. Defendant's parole officer testified that he did not hear from defendant between February 26 and March 13, 1998. The parole officer attempted to locate defendant, and on March 13, defendant was taken into custody in Denver. His parole was later revoked. Defendant was sentenced to six years in the Department of Corrections.

## I.

■ Defendant argues that the trial court erred in instructing the jury to convict him of escape if the prosecution proved that he "failed to remain within the extended limits on his confinement," which is the definition of escape under § 17–27.5–104, C.R.S.2002. The prosecution had charged him with violating § 18–8–208(2), C.R.S.2002, which requires proof of "escape[ ] from ... custody or confinement," and defendant argues that the People's proof effectively amended the charge of escape. We disagree.

Because this argument raises a question of law, our review is de novo. *See Davis v. Schwankl,* 70 P.3d 509, 2002 WL 31357243 (Colo.App. No. 01CA1837, Oct. 10, 2002).

■ Amendments that effectively subject the defendant to the risk of conviction for an offense that was not originally charged in the information are prohibited. *See People v. Jefferson,* 934 P.2d 870 (Colo.App. 1996). To be sufficient, an information must allege sufficient facts to permit the accused to prepare an adequate defense, and it must assure that a defendant cannot be prosecuted again for the same crime. *People v. Melillo,* 25 P.3d 769 (Colo.2001).

Section 17–27.5–104 provides that "[i]f an offender fails to remain within the extended limits on his confinement as established under the intensive supervision program ... he shall be deemed to have escaped from custody and shall, upon conviction thereof, be punished as provided in section 18–8–208, C.R.S."

Section 18–8–208(2), under which defendant was charged, provides that "[a] person commits a class 3 felony if, while being in custody or confinement following conviction of a felony other than a class 1 or class 2 felony, he knowingly escapes from said custody or confinement."

Here, the information recites all elements of escape under § 18–8–208, C.R.S.2002, includes the date on which the escape occurred, and names the authority in which defendant was to have been placed in custody and confinement. The prosecution was not required to cite the legal definition of escape in the context of ISP programs.

The record shows that defendant signed the parole agreements, which cited § 17–27.5–104, and acknowledged his understanding that, should he leave his residence of record for his ISP confinement, he would be liable for felony escape. The trial court further found that the parole board mittimus expressly had informed defendant of the meaning of custody and confinement.

We note that the prosecution tendered a jury instruction that used the definitions of § 17–27.5–104. Defendant did not object to its use. Such use was proper. *See generally People v. Albaugh,* 949 P.2d 115 (Colo.App. 1997). Further, the jury was properly instructed on the elements of § 18–8–208, one of which is that a defendant be in "custody or confinement." The trial court defined "custody or confinement" by reciting the relevant part of § 17–27.5–104.

Taken together, the jury instructions, the information, and the parole mittimus signed by defendant indicate that he had sufficient notice that he could be liable for escape if he failed to remain within the extended limits of his ISP confinement and he risked prosecution under the escape provisions of § 18–8–

208. Therefore, the court did not err in instructing the jury under § 17–27.5–104 concerning custody or confinement.

## II.

■ Defendant contends that his escape conviction must be vacated because, as a mandatory parolee who had discharged his prison sentence, he was no longer in "custody or confinement." We reject this contention.

Section 18–1.3–401(1)(a)(V)(D), C.R.S.2002, provides that, if an offender "has been granted release to parole supervision by the state board of parole, the offender shall be deemed to have discharged the offender's sentence to imprisonment." A discharge of the sentence to imprisonment is not equivalent to the satisfaction and discharge of mandatory parole.

■ Defendant argues that § 17–27.5–104 applies only to those on discretionary parole. He cites no authority, and we are unable to find any, to support this distinction. The cases do not distinguish between mandatory and discretionary parolees. Further in *People v. Garcia*, 64 P.3d 857, 2002 WL 58926 (Colo.App. No. 99CA2360, Jan. 17, 2002), the division observed that § 17–27.5–106, the statute authorizing ISP for parolees, does not distinguish between types of parole). We therefore conclude that § 17–27.5–104 applies to all parolees and not just those on discretionary parole.

## III.

■ Defendant next argues that his escape conviction must be vacated because the prosecution failed to prove that the RTC constituted "confinement" as used in §§ 17–27.5–104 and 18–8–208. We are not persuaded.

Under § 18–8–201(2), C.R.S.2002, escape is defined as "a continuing activity commencing with the conception of the design to escape and continuing until the escapee is returned to custody or the attempt to escape is thwarted or abandoned."

Under § 16–1–104(9), C.R.S.2002, custody means "the restraint of a person's freedom in any significant way."

In *People v. Williams*, 33 P.3d 1187 (Colo. App.2001), a division of this court held that a curfew directive constituted an extended limitation on the defendant's confinement. In *People v. Lucero*, 654 P.2d 835 (Colo.1982), the supreme court held that an offender temporarily released on a day pass from a correctional facility remained in constructive custody, and the pass merely extended the limits of confinement from the facility to those granted by the pass. In *People v. Perea*, 74 P.3d 326, 331, 2002 WL 1766009 (Colo.App. No. 00CA1473, Aug. 1, 2002), a division of this court held that under § 17–27.5–104, "extended limits on his confinement" means "geographic and time limits placed on the offender beyond those imposed by incarceration in a correctional facility."

Here, defendant contends that, because RTC was an unlocked facility where residents could wear their own clothing, he was not in confinement. He relies on *Beecroft v. People*, 874 P.2d 1041 (Colo.1994), as support for his contention that participation in a drug treatment facility is not "confinement." *Beecroft* does not support defendant's position.

In *Beecroft*, the defendant's six-year sentence to imprisonment was suspended on condition that he successfully complete drug treatment at Cenikor, where his treatment was supervised by the probation department. When the defendant continually failed to comply with the program's rules, the court vacated the suspended sentence, reinstated the six-year prison sentence, and declined to give the defendant credit for his seven-month confinement in Cenikor. The supreme court affirmed, noting that the record indicated that the defendant was relatively free to come and go and was not confined for purposes of the presentence confinement statute, § 18–1.3–405, C.R.S.2002 (formerly § 16–11–306).

In sharp contrast to the freedom enjoyed by the defendant in *Beecroft*, here, defendant was confined to ISP as a condition of his probation and was not free to leave the facility. Even though he was under no physical restraint, he was aware that any unauthorized absence would be reported to authorities. That his ISP confinement was also part

of his residential treatment does not minimize the confinement. Defendant's ISP residence amounted to confinement, and whether he should have received credit for his brief period of confinement is not an issue before us.

*Lawson v. Zavaras,* 966 P.2d 581 (Colo. 1998), is illustrative in that, based on the parole agreements defendant signed, he was duty-bound to report to his parole officer daily and was restricted in his movement. Such parameters constitute custody and confinement as a matter of law. *See People v. Garcia, supra.* Based on *People v. Williams, People v. Lucero,* and *People v. Perea,* we hold that assignment of a defendant to RTC, as a place of residence during ISP, constitutes confinement.

### IV.

▮ Defendant argues that his escape conviction violates double jeopardy because it follows the revocation of his parole based on the same conduct. We disagree.

▮ A division of this court has held that parole revocation is an administrative proceeding to determine whether a parolee has violated the conditions of his parole and that it is not a proceeding to punish a criminal defendant for violation of a criminal law. *People v. Gallegos,* 914 P.2d 449 (Colo.App. 1995). Because a criminal prosecution is a judicial proceeding and serves a different end than a parole revocation, "the finding that the defendant no longer merits parole does not foreclose the criminal justice system from punishing the defendant for that conduct." *People v. Gallegos, supra,* 914 P.2d at 450. We are persuaded by this analysis and decline to depart from its holding.

▮ Thus, because we view parole as a privilege and its revocation as an administrative proceeding, revocation "does not punish the defendant for his conduct, but merely reaffirms the original sentence and requires the defendant to serve it while in custody." *People v. Gallegos, supra,* 914 P.2d at 451. Therefore, double jeopardy does not apply.

### V.

▮ Defendant argues that the trial court violated his constitutional right to confront the witnesses against him by admitting the ALJ's taped statements from the parole hearing. Defendant reasons that the ALJ's hearsay comments amount to a directed verdict or, at the least, an unqualified expert opinion likely to confuse the jury. We disagree.

▮ First, we reject the contention that the ALJ's statements were hearsay. Hearsay is a statement other than one made by the declarant while testifying at trial, offered to prove the truth of the matter asserted. CRE 801(c). A declarant's prior statement that is not offered to prove the truth of the matter asserted is not hearsay. *Davis v. Bonebrake,* 135 Colo. 506, 313 P.2d 982 (1957)(an utterance offered to prove state of mind instilled in another person in consequence of that utterance serves no assertive or testimonial use, and the utterance is therefore admissible); *see also State v. Black,* 230 N.C. 448, 53 S.E.2d 443 (1949); 6 John H. Wigmore, *Evidence* §§ 1788, 1789 (Chadbourn rev.1976).

Here, during trial, the prosecutor played a tape in which the ALJ advised defendant, "You will be on ISP while you are in RTC, which means if you walk away from there, you'll get an escape charge, and you'll have relapse prevention after RTC." The prosecutor argued that the ALJ's warning was res gestae that supported the requirement that defendant knowingly escaped from ISP.

The prosecutor did not produce the ALJ or demonstrate her unavailability, which, however, would be required only if an exception to the hearsay rule were sought. Here, the ALJ's statement was not hearsay. As the prosecutor pointed out with defendant's tacit acknowledgment, the purpose of the tape was to establish that defendant was on notice that he was not to escape the confines of his ISP. Defense counsel agreed that the prosecutor could "make a statement on opening . . . [that] the evidence will show [defendant] knew he was not to escape or knew he was on some sort of notice," but objected to "quoting the statement of the [ALJ]." The court overruled defendant's objection, stating that the tape concerned the knowledge of defendant and merely duplicated the warrant

which committed defendant to prison. We therefore hold that the tape was offered to prove notice to defendant and was not hearsay. *See Palmer v. A.H. Robins Co.,* 684 P.2d 187 (Colo.1984)(where evidence offered for a purpose other than to prove the truth of the thing asserted and to prove the existence of notice, no abuse of discretion in its admission); *see also Player v. Thompson,* 259 S.C. 600, 193 S.E.2d 531 (1972)(where testimony was not offered to prove the truth of the matter stated, but solely to prove notice, which is a state of mind, hearsay rule does not apply).

■ Second, we are not persuaded by defendant's reliance on *United States v. Zimmerman,* 943 F.2d 1204, 1212 (10th Cir.1991), in which the district court rejected the admission of a judicial opinion on the *possibility* that "a jury might be confused into believing that the opinion's findings are somehow binding in the case at bar." We read *Zimmerman* to be inapposite.

In *Zimmerman,* opinions by separate bankruptcy judges concerning the merits of the criminal charge were neither law of the case nor part of the record that the trial court could have observed through judicial notice. *Cf. Massey v. People,* 649 P.2d 1070 (Colo.1982)(where trial court took judicial notice of mittimus under which the defendant had been confined, classification of the defendant's past offense was a question of law, and court was justified in taking judicial notice when facts upon which legal conclusion was based were unchallenged). In *Zimmerman,* the opinions concerned parties other than the defendant and plainly were offered to suggest that the defendant's affiliation with those parties tainted him.

Here, in contrast, the ALJ's statement was directed to defendant and was part of the record at trial. The ALJ's ruling is not an opinion; it is an order on the record that is binding upon defendant unless and until he challenges it through the judicial process. *See Banek v. Thomas,* 733 P.2d 1171 (Colo. 1986)(CRE 803(22) creates a hearsay exception for a judgment of previous conviction).

We conclude that the evidence adduced at trial and the defendant's certification of the parole mittimus, which advised him he could be liable for escape, support the legitimate purposes of presenting the tape as proof of defendant's receipt of notice. Thus, the trial court did not violate his confrontation rights in admitting the tape.

VI.

■ We decline to address defendant's contentions that § 17–27.50–104 violates the separation of powers and nondelegation doctrine of the Colorado Constitution and that § 17–27.5–104 is void pursuant to Colo. Const. art. V, § 21 because the title of House Bill 89–1067 does not express its subject matter.

In his reply brief, defendant argues that the separation of powers claim was asserted and preserved for appeal. However, defendant has not cited any record support for his argument, nor are we able to find any.

Thus, because defendant did not raise these constitutional issues in the trial court, we will not consider them on appeal. *See People v. Cagle,* 751 P.2d 614 (Colo.1988).

Judgment affirmed.

Judge METZGER and Judge MARQUEZ concur.