The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

James V. BUCKNER, Defendant–Appellant.

No. 07CA2510.

Colorado Court of Appeals, Div. II.

Oct. 15, 2009.

John W. Suthers, Attorney General, Jennifer L. Ward, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Cohen–Ringler & Associates, PLLC, Laurie Cohen–Ringler, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge MÁRQUEZ.*

Defendant, James V. Buckner, appeals the judgment of conviction entered on a jury verdict finding him guilty of one count of possession and one count of distribution of a controlled substance. He also appeals his fifteen-year sentence to the custody of the Department of Corrections (DOC). We affirm.

The prosecution presented evidence that an undercover police officer called defendant and arranged a meeting for the purpose of purchasing drugs. Defendant provided the officer with crack cocaine in exchange for $40 and was later arrested. The prosecution charged defendant with one count of distribution of a controlled substance, a class three

felony under section 18–18–405(1), (2)(a)(I)(A), C.R.S.2009, and one count of possession of more than one gram of a controlled substance, a class four felony under section 18–18–405(1), (2)(a)(I)(A), C.R.S.2009.

The evidence presented at trial came primarily from the undercover officer who arranged and executed the transaction. Several other officers also testified to having participated in the transaction or the subsequent arrest. Although a jury found defendant guilty of both charged offenses, the trial court determined that the possession count merged with the distribution count. After a hearing, the trial court sentenced defendant to fifteen years in the custody of the DOC. This appeal ensued.

## I. Conflict–Free Counsel

Defendant contends that he did not receive a fair trial because the trial court refused his requests for conflict-free counsel. Because defendant has not shown that his attorney was operating under a conflict, we disagree.

We review a trial court's decision on an indigent defendant's request for substitution of counsel under an abuse of discretion standard. *People v. Garcia,* 64 P.3d 857, 863 (Colo.App.2002). A trial court abuses its discretion when its decision is manifestly arbitrary, unreasonable, or unfair. *People v. Orozco,* 210 P.3d 472, 475 (Colo.App.2009).

When a defendant voices problems with court-appointed counsel, the trial court must inquire into the reasons for the defendant's dissatisfaction. *Garcia,* 64 P.3d at 863. Before a change of counsel is warranted, the court must verify that defendant has a well-founded reason for believing that the appointed attorney cannot or will not effectively represent him. *Id.*

The constitutional right to effective assistance of counsel may be violated when a defendant is represented by counsel who labors under a conflict of interest. *Armstrong v. People,* 701 P.2d 17, 19 (Colo.1985). Thus,

* Sitting by assignment of the Chief Justice under provisions of the Colo. Const. art. VI, § 5(3) and § 24–51–1105, C.R.S.2009.

if an indigent defendant establishes that the attorney has an actual conflict of interest, the court must appoint substitute counsel. *See Garcia,* 64 P.3d at 863. A conflict of interest exists when "there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer." Colo. RPC 1.7(a)(2).

Here, defendant filed two pro se motions to replace the public defender assigned to his case. The first motion stated that defense counsel had failed to spend adequate time with defendant, failed to review certain evidence, and failed to discuss various tactics with defendant. The second motion reiterated defendant's dissatisfaction and alleged general incompetence on the part of his attorney. At arguments on these motions, defendant again voiced his concerns regarding the number of visits he had received from his attorney and his attorney's unwillingness to take seriously his suggested defenses.

Throughout these protestations, defendant never provided any argument that his attorney's representation was limited by that attorney's obligation to some third party or to himself. Rather, the disagreements of which defendant complains were primarily related to trial strategy, which alone does not establish good cause for substitution of counsel. *See Garcia,* 64 P.3d at 864. Thus, although defendant expressed dissatisfaction with his attorney, the trial court did not abuse its discretion in denying his requests for alternate defense counsel.

Consequently, we reject defendant's contention that he was denied conflict-free counsel.

## II. Self–Representation

■ Defendant contends that the trial court erroneously deprived him of the opportunity to represent himself. Because defendant did not clearly indicate his desire to proceed pro se, we disagree.

■ A person accused of a crime has the right to defend himself or herself against the charges. *People v. Shepard,* 989 P.2d 183, 185 (Colo.App.1999). The grant or denial of a defendant's request to self represent is within the discretion of the trial court. *Id.*

■ A defendant's request for self-representation must be unequivocal. "If the request is stated in uncertain terms or in an uncertain manner, it cannot be regarded as a demand for self-representation, nor can it be considered a waiver of the defendant's right to counsel under the Sixth Amendment." *Id.*

Here, defendant did not state in certain terms his desire to represent himself. Although the subject of proceeding pro se was broached by defendant, defense counsel, and the trial court, defendant never stated outright that he wanted to proceed without counsel. Rather, the portions of the record highlighted by defendant in his brief on appeal indicate only that the topic was dropped after defense counsel suggested a continuance so that defendant could review discovery.

Consequently, we reject defendant's contention that the trial court deprived him of the ability to represent himself.

## III. Cellular Telephone Evidence

■ Defendant contends that the trial court erred by admitting his cellular telephone into evidence. Specifically, he claims that information contained on the telephone was inadmissible either as hearsay or under CRE 403. We do not agree that hearsay was admitted or that the evidence was more prejudicial than probative.

We review a trial court's evidentiary decisions for abuse of discretion. *People v. Segovia,* 196 P.3d 1126, 1129 (Colo.2008).

Hearsay is not admissible except as provided by the Colorado Rules of Evidence or other applicable statutes or rules. CRE 802. Hearsay is "a statement other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." CRE 801(c). Within the context of the rule against hearsay, a "declarant" is "a person who makes a statement," CRE 801(b), and a "statement" is either "(1) an oral or written assertion or (2) nonverbal conduct of a person, if it is

intended by him to be communicative." CRE 801(a).

Here, the prosecution sought admission of defendant's cellular telephone to show that defendant had spoken with the undercover officer who arranged the drug sale. Specifically, the prosecution sought to show the jury that the undercover officer's telephone number was listed on defendant's telephone's incoming call register.

The officer's testimony served to authenticate that the phone was the one on which defendant received the officer's call. Thus, the phone was properly admitted into evidence. Upon its admission, the jurors could inspect it to determine its contents. The telephone was an electronic device containing electronically stored information, not a "person" or "declarant" making a communicative "statement" within the meaning of CRE 801. Upon admission of the telephone, the jurors could inspect it see that it had, in fact, stored the officer's telephone number as an incoming call. Hence, the stored information was not hearsay and the trial court did not abuse its discretion by overruling defendant's objection on those grounds.

We note that several other jurisdictions—applying definitions substantially similar to those in our own hearsay rules—have concluded that information automatically generated by machines is not hearsay. *United States v. Hamilton*, 413 F.3d 1138, 1142 (10th Cir.2005) (computer-generated "header" information attached to pornographic images not hearsay); *United States v. Khorozian*, 333 F.3d 498, 506 (3d Cir.2003) (concluding that header information automatically generated by a fax machine was not hearsay because nothing indicated by a machine is hearsay).

As here, the logic underlying those decisions is that such information involves neither a "declarant" nor a "statement" within the meaning of the rules barring hearsay. Additionally, one jurisdiction has concluded that the appearance of a name on a cellular telephone's display screen—when the telephone was receiving a call—was not a statement for purposes of the hearsay rule. *United States v. Sellers*, 2009 WL 57536 at *4 (N.D.Ind. No. 02:08–CR–023, Jan. 8, 2009) (unpublished opinion and order on defendant's motion for judgment of acquittal or new trial).

■■■ To the extent that defendant argues that the telephone should have been excluded under CRE 403, we also disagree. Evidence may be excluded if its probative value is substantially outweighed by a danger of unfair prejudice. CRE 403. An appellate court, when reviewing a trial court's decision on a CRE 403 objection, must afford the evidence its maximum probative value attributable by a reasonable fact finder and the minimum unfair prejudice to be reasonably expected. *People v. Gibbens*, 905 P.2d 604, 607 (Colo.1995). Here, the telephone number in the telephone supported the undercover officer's testimony that she had called defendant to arrange a drug transaction and subsequently executed that transaction. The telephone was thus probative of defendant's guilt, and defendant has not argued how or why this evidence was unfairly prejudicial. Thus, the trial court did not abuse its discretion by finding that the evidence was admissible under CRE 403.

We also reject defendant's argument that because the trial court admitted the entire telephone, it erroneously admitted all of the other telephone numbers, text messages, and voice mails accessible from that telephone. Even assuming that such information was on the telephone and that the telephone was erroneously admitted, defendant has not shown that he was prejudiced by the trial court's decision. Indeed, he has not brought to our attention any actual text messages or other information that the jury could have obtained from the telephone. Hence, we have no reason to believe that admission of the telephone could have harmed defendant in this way. *See Liggett v. People*, 135 P.3d 725, 733 (Colo.2006) (trial court's abuse of discretion does not require reversal if the error was harmless).

## IV. Currency Evidence

■■■ We also are not persuaded by defendant's contention that he was denied a fair trial because the currency used in the drug purchase for which he was arrested was

placed back into circulation before he had the opportunity to examine it. Any error on the part of the trial court was harmless.

▮▮▮▮ The Due Process Clause mandates that the state disclose to criminal defendants favorable evidence that is material to either guilt or punishment. *People v. Braunthal,* 31 P.3d 167, 172 (Colo.2001). When evidence can be collected and preserved in the performance of routine duties by state agents, failure to do so is tantamount to suppression of the evidence. *Id.* Thus, when it is reasonably foreseeable that evidence may be favorable to an accused, the prosecution must employ procedures to preserve such evidence. *Id.* However, the prosecution's duty to preserve evidence is not absolute. *Id.*

▮▮▮ To establish a due process violation for failure to preserve exculpatory evidence, a defendant must show that "(1) the evidence was destroyed by state action; (2) the evidence possessed an exculpatory value that was apparent before it was destroyed; and (3) the defendant was unable to obtain comparable evidence by other reasonably available means." *Id.* at 173.

If a due process violation has occurred, we must evaluate whether the trial court fashioned an appropriate remedy. *People v. Enriquez,* 763 P.2d 1033, 1036 (Colo.1988). The trial court has broad discretion in this regard. *Id.* We will reverse the trial court only if the omitted evidence, when evaluated in the context of the entire record, creates a reasonable doubt that did not otherwise exist. *People v. Roblas,* 193 Colo. 496, 500, 568 P.2d 57, 60 (1977).

Here, police photocopied the bills to be used in the drug transaction with defendant before the transaction occurred. After defendant's arrest a police officer took two $20 bills from defendant and matched them to the photocopy. Police placed these bills back into circulation at some point before trial, thus depriving defendant of the ability to inspect them.

Defendant filed a motion in limine arguing that because he had been unable to review the original bills, they should not be discussed at trial and the photocopies should not be admitted. The trial court heard arguments on the motion and ruled that the photocopies could be admitted and that witnesses could testify as to the match between the photocopies and the money recovered from defendant. At trial, the police officer who recovered the bills from defendant testified that their serial numbers matched the serial numbers on the photocopies made before the transaction.

Assuming—without deciding—that the prosecution's failure to produce the original bills was a due process violation, and that the trial court failed to sanction the prosecution adequately for the violation, we still cannot conclude that reversal is required.

The evidence against defendant was overwhelming. The undercover officer provided detailed testimony regarding her arranging and executing the drug purchase with defendant. The prosecution played for the jury an audio recording of the entire transaction, which had been captured by a microphone worn by the undercover officer. Another plain clothes officer testified that although he could not see the actual exchange of money for drugs, he witnessed the entire interaction between defendant and the purchasing officer. The arresting officer testified that defendant ran when confronted by police, and that he was carrying a bag of suspected crack cocaine at the time of his arrest. Defendant presented no evidence.

Under these circumstances, defendant's lack of access to the actual currency used in the transaction, when viewed in the context of the evidence as a whole, could not have created a reasonable doubt in the minds of the jurors. Thus, reversal is not required.

## V. Sufficiency of the Evidence

Contrary to defendant's contention, we conclude that there was sufficient evidence to support his conviction.

When a defendant challenges the sufficiency of the evidence on appeal, the reviewing court must determine "whether any rational trier of fact might accept the evidence, taken as a whole and in the light most favorable to the prosecution, as sufficient to support a finding of guilt beyond a reasonable doubt."

*People v. McIntier,* 134 P.3d 467, 471 (Colo. App.2005).

■ The offense of distribution has the following elements: (1) the defendant, (2) knowingly, (3) distributed, (4) a controlled substance. § 18–18–405(1)(a); *People v. Grace,* 55 P.3d 165, 171 (Colo.App.2001). As discussed in section IV, the prosecution presented ample evidence to support a finding of guilt beyond a reasonable doubt.

Defendant complains that the prosecution did not provide call records from the undercover officer, did not name the anonymous informant who provided police with defendant's name, and did not produce the currency used in the charged transaction. However, these complaints do little to detract from the strongly corroborated eyewitness evidence against him.

Consequently, we reject defendant's contention that the evidence against him was insufficient.

### VI. Cumulative Error

We also disagree with defendant's contention that the cumulative effect of various errors at trial requires reversal.

■ "Where individual errors in a trial do not require reversal, but in the aggregate show the absence of a fair trial, reversal is required. Conversely, where there are no individual errors at trial, or where errors do not show the absence of a fair trial, reversal is not required." *People v. Dore,* 997 P.2d 1214, 1223 (Colo.App.1999).

Here, any errors that occurred at trial were harmless. We thus conclude that no new trial is warranted.

### VII. Sentencing Proportionality

■ Defendant contends that his fifteen-year sentence to the custody of the DOC violates the Eighth Amendment's prohibition of cruel and unusual punishment. We disagree.

We review de novo whether a trial court's sentence yields an inference of gross disproportionality. *People v. McNally,* 143 P.3d 1062, 1064 (Colo.App.2005).

■ The constitutional prohibition against cruel and unusual punishment does not require strict proportionality between crimes committed and punishments imposed. Instead, it prohibits only those sentences that are "grossly disproportionate" to the crime. *People v. Mershon,* 874 P.2d 1025, 1030 (Colo.1994). "Thus, the threshold proportionality review measures the relationship between the nature and number of offenses committed and the severity of the sentence imposed." *People v. Campbell,* 58 P.3d 1080, 1088 (Colo.App.2002), *aff'd,* 73 P.3d 11 (Colo. 2003).

■ Where the offense is serious and habitual criminal charges are not involved, only an abbreviated proportionality review is required. *See Close v. People,* 48 P.3d 528, 537–28 (Colo.2002); *People v. Hayes,* 923 P.2d 221, 229 (Colo.App.1995). Under such circumstances a reviewing court need not compare the defendant's sentence with the sentences imposed on similarly situated criminals in the same jurisdiction, or with the sentences imposed for commission of the same crime in other jurisdictions, unless the threshold analysis of the crime committed and the sentence imposed leads to an inference of gross disproportionality. *Campbell,* 58 P.3d at 1088. Additionally, the state is justified in punishing a recidivist more harshly than a first time offender. *Solem v. Helm,* 463 U.S. 277, 296, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983).

Here, the jury found defendant guilty of distribution of a controlled substance. Distribution of a controlled substance is a "grave or serious" offense for purposes of proportionality review. *See People v. Deroulet,* 48 P.3d 520, 524 (Colo.2002). The maximum statutorily permissible sentence was thirty-two years of imprisonment. *See* § 18–1.3–401(1)(a)(V)(A), C.R.S.2009 (presumptive sentencing range for a class three felony is four to twelve years of imprisonment); § 18–1.3–401(6), C.R.S.2009 (court may impose sentence of up to twice the presumptive range if aggravating factors are present); § 18–1.3–401(10)(a), (10)(b)(XI), C.R.S.2009 (unlawful distribution of a controlled substance is an extraordinary risk crime, in which the maxi-

mum of the presumptive range is extended by four years).

The trial court considered both the low value of the drug transaction at issue here and that defendant had nine prior felony convictions. Despite his numerous previous offenses, the court sentenced defendant to less than half of the maximum statutorily available term of incarceration. Hence, we find no inference of gross disproportionality and conclude that defendant's Eighth Amendment rights were not violated.

The judgment and sentence are affirmed.

Judge CARPARELLI and Judge RICHMAN concur.